# EXHIBIT D

4

INSTR 20060302432
OR BK 08630 PG 2565 PGS=25
MARTHA O. HAYNIE, COMPTROLLER
ORANGE COUNTY, FL
05/09/2006   12:00:00 PM
MTG DOC TAX 23,660.00
INTANG TAX 13,520.00
REC FEE 214.00

This Instrument Prepared By and
To Be Returned To:
Mark R. King, Esq.
Miller, Hamilton, Snider & Odom, LLC
1200 Brickell Avenue, 11ᵗʰ Floor
Miami, FL 33131

## FLORIDA REAL ESTATE MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT (the "Mortgage") is made and entered into as of the __25__ day of April, 2006, by WSG CORAL SPRINGS, LP (the "Borrower"), whose address is 400 Arthur Godfrey Road, Miami Beach, Florida 33140, and COLONIAL BANK, N.A. (the "Bank"), whose address is 1200 Brickell Avenue, 10ᵗʰ Floor, Miami, Florida 33131.

### WITNESSETH:

WHEREAS, Borrower is justly and lawfully indebted to Bank for a sum in the principal amount of up to SIX MILLION SEVEN HUNDRED AND SIXTY AND 00/100 DOLLARS ($6,760,000.00) (the "Loan"), as evidenced by that certain promissory note executed by Borrower payable to the order of Bank (the "Note"), bearing the same date as this Mortgage and to be paid according to its terms; and

WHEREAS, Borrower and all makers, endorsers, sureties, guarantors, accommodation parties and all persons liable or to become liable with respect to the Loan, and any and all renewals and extensions of same, are each included in the term "Obligor" as used in this Mortgage;

NOW, THEREFORE, to secure: (i) the payment of the Loan and such future or additional advances as may be made by Bank, at its option and for any purpose, to Borrower or Borrower's permitted successor(s) in title, provided that all those advances are to be made within twenty (20) years from the date of this Mortgage (the total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed twice the original principal amount of the Loan); (ii) interest plus any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this Mortgage, with interest on those disbursements; and (iii) any letters of credit issued by Bank for the account of Borrower, for any purpose; (iv) any and all interest rate swap agreements or interest rate protection agreements entered into in connection with the Loan; and (v) the full and faithful performance of the covenants and agreements contained in the Note, this Mortgage and all other

instruments and documents executed in connection with the Loan by Borrower and/or any other Obligor (the "**Loan Documents**"), Borrower hereby grants, bargains, sells, conveys, assigns, transfers, mortgages, pledges, delivers, sets over, warrants and confirms to Bank, and grants Bank a security interest in:

All those certain lots, pieces, or parcels of land lying and being in Orange County, State of Florida (the "**Property**"), together with the buildings and improvements now or hereafter situated thereon, said land being legally described as follows:

See Exhibit "A" attached hereto and made a part hereof.

TOGETHER WITH all and singular the tenements, hereditaments, easements, riparian rights and other rights now or hereafter belonging or appurtenant to the Property, and the rights (if any) in all adjacent roads, ways, streams, alleys, strips and gores, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of Borrower of, in and to the same and every part and parcel thereof;

TOGETHER WITH any and all tangible property (collectively, the "**Equipment**") now or hereafter owned by Borrower and now or hereafter located at, affixed to, placed upon or used in connection with the Property or any present or future improvements thereon, including without limitation: all machinery, equipment, appliances, fixtures, conduits and systems for generating or distributing air, water, heat, air conditioning, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse, sewage or garbage, or for fire prevention or extinguishing; all elevators, escalators, lifts and dumbwaiters; all motors, engines, generators, compressors, pumps, lift stations, tanks, boilers, water heaters, furnaces and, incinerators; all furniture, furnishings, fixtures, appliances, installations, partitions, shelving, cabinets, lockers, vaults and wall safes; all carpets, carpeting, rugs, underpadding, linoleum, tiles, mirrors, wall coverings, windows, storm doors, awnings, canopies, shades, screens, blinds, draperies and related hardware, chandeliers and light fixtures; all plumbing, sinks, basins, toilets, faucets, pipes, sprinklers, disposals, laundry appliances and equipment, and kitchen appliances and equipment; all alarm, safety, electronic, telephone, music, entertainment and communications equipment and systems; all janitorial, maintenance, cleaning, window washing, vacuuming, landscaping, pool and recreational equipment and supplies; and any other items of property, wherever kept or stored, if acquired by Borrower with the intent of incorporating them in and/or using them in connection with the Property or any improvements to the Property; together also with all additions thereto and replacements and proceeds thereof (Borrower hereby agreeing, with respect to all additions and replacements and proceeds, to execute and deliver from time to time such further instruments as may be requested by Bank to confirm their inclusion herein); all of which foregoing items described in this paragraph are hereby declared to be part of the real estate and encumbered by this Mortgage;

TOGETHER WITH (a) any and all awards or payments, including interest thereon and the right to receive the same, growing out of or resulting from any exercise of the power of eminent domain (including the taking of all or any part of the Premises, as defined hereinafter), or any alteration of the grade of any street upon which the Property abuts, or any other injury to, taking of, or decrease in the value of the Premises or any part thereof; (b) any unearned premiums on any

2

hazard, casualty, liability, or other insurance policy carried for the benefit of Borrower and/or Bank with respect to the Premises (as defined hereinafter); (c) all rights of Borrower in and to all supplies and materials delivered to or located upon the Property or elsewhere and used or usable in connection with the construction or refurbishing of improvements on the Property; and (d) all rights of Borrower in, to, under, by virtue of, arising from or growing out of any and all present or future contracts, instruments, accounts, insurance policies, permits, licenses, trade names, plans, appraisals, reports, paid fees, choses-in-action, subdivision restrictions or declarations or other intangibles whatsoever now or hereafter dealing with, affecting or concerning the Property, the improvements thereto, or any portion thereof or interest therein, including but not limited to: (i) all contracts, plans and permits for or related to the Property or its development or the construction or refurbishing of improvements on the Property, (ii) any agreements for the provision of utilities to the Property, (iii) all payment, performance and/or other bonds, (iv) any contracts now existing or hereafter made for the sale by Borrower of all or any portion of the Property, including any deposits paid by any purchasers (howsoever such deposits may be held) and any proceeds of such sales contracts, including any purchase-money notes and mortgages made by such purchasers, and (v) any declaration of condominium, restrictions, covenants, easements or similar documents now or hereafter recorded against the title to all or any portion of the Property; and

TOGETHER WITH all of Borrower's rights to enter into any lease or lease agreement regarding all or any part of the Property, and all of Borrower's rights to encumber the Property further for debt, Borrower hereby (a) representing as a special inducement to Bank to make the Loan that, as of the date hereof, there are no encumbrances to secure debt prior or junior to this Mortgage, and (b) covenanting that there are to be none as of the date when this Mortgage is recorded;

TO HAVE AND TO HOLD the above-described and granted property, appurtenances and rights (referred to collectively in this Mortgage as the "Premises") unto Bank in fee simple forever.

PROVIDED, HOWEVER, that these presents are upon the condition that if Borrower (a) shall pay or cause to be paid to Bank the principal and all interest payable in respect of the Loan and any future advance made under this Mortgage and any other sums secured by this Mortgage, at the time and in the manner stipulated in the Note or this Mortgage or any other Loan Document, all without any deduction or credit for taxes or other similar charges paid by Borrower, (b) shall punctually perform, keep and observe all and singular the covenants and promises in the Note and any future advance agreement(s), in any renewals, extensions or modifications thereof, and in this Mortgage or any other Loan Document expressed to be performed, kept and observed by and on the part of Borrower, and (c) shall not permit or suffer to occur any default under this Mortgage or any other Loan Document, then this Mortgage and all the interests and rights hereby granted, bargained, sold, conveyed, assigned, transferred, mortgaged, pledged, delivered, set over, warranted and confirmed shall cease, terminate and be void, but shall otherwise remain in full force and effect.

Borrower covenants with and warrants to Bank: (a) that Borrower has good and marketable title to the Property, is lawfully seized and possessed of the Property in fee simple and has good right to sell and convey the same; (b) that the Premises are unencumbered; and (c) that Borrower shall forever warrant and defend the Premises unto Bank against the lawful claims and demands of all persons whomsoever, and shall make such further assurances to perfect fee simple title to the

3

Property in Bank as Bank may reasonably require. Borrower further covenants and agrees with Bank as follows:

1.    Borrower shall pay all sums due Bank at the time and in the manner provided in the Note, this Mortgage, any other Loan Document or any instrument evidencing a future advance, renewal or extension, and Borrower shall otherwise perform, comply with and abide by each and every one of the stipulations, agreements, conditions and covenants contained in the Note, this Mortgage or any other Loan Document.

2.    Borrower shall pay all taxes, assessments (whether general or special) and other charges whatsoever levied, assessed, placed or made against all or any part of the Premises or any interest of Bank therein, or against the Note, this Mortgage, any Loan Document or any obligation thereunder when due. Borrower shall make such payment in full (and shall deliver to Bank the paid receipts) upon the same first becoming due and payable. If Borrower shall fail, neglect or refuse to pay any such taxes, assessments or other charges as aforesaid, then Bank may pay the same, and any funds so advanced by Bank shall bear interest, shall be paid and shall be secured as provided in Paragraph 14. Notwithstanding the foregoing, Borrower shall have the right to contest all such taxes, assessments and other charges in good faith, provided, however, Borrower shall commence such contest within 10 days of the due date of any such obligation and shall diligently pursue such contest thereafter.

3.    <u>Insurance.</u>

(a)    Borrower shall maintain property insurance with a reputable and highly rated insurance company or companies licensed in Florida and reasonably acceptable to Bank, covering all buildings and improvements now or hereafter located on the Property and all the Equipment and all tangible personal property encumbered by this Mortgage, for an amount not less than their full insurable value on a replacement cost basis, without contribution or coinsurance (or with coinsurance and an agreed amount endorsement), for the benefit of Borrower and Bank, as their interests may appear, by policies on such terms, in such form and for such periods as Bank shall reasonably require or approve from time to time, insuring with extended coverage and broad form coverage against loss or damage by fire, lightning, flood, windstorm, hail, aircraft, riot, vehicles, explosion, smoke, falling objects, collapse, sudden tearing asunder, breakage of glass, freezing, electricity, sprinkler leakage, water damage, vandalism and malicious mischief, theft, riot attending a strike, civil commotion, and when and to the extent required by Bank, against any other risks. Regardless of the types or amounts of insurance required and approved by Bank, Borrower shall assign and deliver to Bank all policies of insurance which insure against any loss or damage to the Premises or any part thereof, as collateral and further security for the payment of the Loan, with loss payable to Bank pursuant to a standard Bank clause acceptable to Bank.

(b)    If Borrower defaults in so insuring the Premises or any part thereof or in so assigning and delivering the policies, at its option and for its sole protection and benefit, not for the protection or benefit of the Borrower, Bank may effect such insurance from year to year and pay the premiums therefor, and any such sums advanced by Bank shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

4

(c)    The proceeds of any insurance, or any part thereof, may be applied by Bank, at its option, either to the reduction of the Loan or to the restoration or repair of the Premises. Bank shall not be obligated to see to the proper application by Borrower of any such disbursement. Notwithstanding, absent an Event of Default, proceeds of any insurance shall be made available at Borrower's option to restore or repair the Premises, demolish all or part of the Premises or reduce or satisfy the Loan.

(d)    Borrower shall obtain and carry general comprehensive liability insurance with a reputable and highly rated insurance company or companies licensed in Florida and reasonably acceptable to Bank, which policy shall name both Borrower and Bank as insureds, with initial limits of not less than One Million Dollars ($1,000,000.00) as to personal injury or death, and Five Hundred Thousand Dollars ($500,000.00) with respect to property damage (or such greater or different limits which Bank may require from time to time) and on such terms, in such form and for such periods as Bank shall approve from time to time.

(e)    Borrower shall obtain and carry rent insurance in favor of Bank as loss payee covering against the loss of rents in the event the improvements on the Property are damaged, in an amount equal to or exceeding the annual rent roll for the insured improvements.

(f)    In the event of a foreclosure of this Mortgage, the purchaser of the Premises shall succeed to all the rights of Borrower in and to all policies of insurance required under this Mortgage, including any right to unearned premiums.

(g)    Not less than thirty (30) days prior to the expiration date of each policy required under this Mortgage, Borrower shall deliver to Bank a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Bank.

(h)    Each policy of insurance required under this Mortgage shall be non-cancelable without at least thirty (30) days' advance written notice to Bank.

(i)    Bank reserves the right to require boiler and machinery insurance, worker's compensation insurance, sinkhole and wind damage insurance, and other insurance coverages as Bank may reasonably require.

The policy or policies of insurance shall: (i) be from companies and in coverage amounts acceptable to Bank; (ii) contain a standard Bank clause in favor of Borrower naming Bank as a Mortgagee and including a lender's loss payee clause in such policy, as applicable; and (iii) be evidenced by original policies or certified copies of policies deposited with Bank, as Bank may elect, to be held by Bank until the Debt shall have been fully paid and discharged. Borrower shall furnish Bank satisfactory evidence of payment of all premiums required and similar evidence of renewal or replacement coverage not later than thirty (30) days prior to the date any coverage will expire.

Each insurance policy or endorsement required herein shall be written by an insurer having a rating not less than "A-" Best's Rating according to the most current edition of Best's Key Rating Guide as determined at the time of the initial policy and at all times during the term hereof. All policies shall indicate that notices related to such insurance shall be sent to Bank at:

5

Colonial Bank, N.A., its successors and/or assigns,
 as their interest may appear
 1200 Brickell Avenue, 10th Floor
 Miami, FL 33131

4.    At Bank's option, Borrower shall pay to Bank, together with and in addition to each regular installment of principal and/or interest payable under the Note, an amount deemed sufficient by Bank to provide Bank with funds in an escrow account sufficient to pay the taxes, assessments, insurance premiums and other charges next due at least thirty (30) days before the date the same are due. In no event shall Bank be liable for any interest on any such funds held in the escrow account. At least thirty (30) days before the date the same are due, Borrower shall furnish to Bank an official statement of the amount of said taxes, assessments, insurance premiums and other charges, and Bank shall pay the same, but only if sufficient funds remain in the escrow account. In the event of any deficiency in the escrow account, Borrower shall upon notice from Bank promptly deposit with Bank such additional funds as Bank may deem necessary to cure the deficiency, in its sole, reasonable discretion. If Bank elects to pay any such taxes, assessments, insurance premiums or other charges notwithstanding the escrow account deficiency, then all sums advanced by Bank in excess of the escrow account balance shall bear interest, shall be paid and shall be secured as provided in Paragraph 14. An official receipt for such sums shall be conclusive evidence of Bank's payment and of the validity of the tax, assessment, insurance premium or other charge so paid. In the event of any default under the Note or this Mortgage or any other Loan Document, Bank at its option may apply any or all funds in the escrow account against the Loan or any other sums secured by this Mortgage, in any order of priority Bank may deem appropriate in its sole discretion. At the time of any permitted transfer of the title to all of the Premises then encumbered by this Mortgage, the balance in the escrow account shall inure to the benefit of such transferee without any specific assignment of such funds. Upon payment in full of the Loan and all other sums secured by this Mortgage, the funds remaining in the escrow account (if any) shall be paid over to the record owner of the Premises encumbered by this Mortgage as of the date of such full payment.

5.    Without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion, no building or other improvements covered by the lien of this Mortgage shall be removed, demolished or materially altered or enlarged (except as required in the event of fire, other casualty or condemnation). Notwithstanding the foregoing, Borrower shall have the right to remove and dispose of, free from the lien of this Mortgage, such Equipment as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, Borrower shall have replaced any such Equipment with new Equipment (of at least the same quality as that of the replaced Equipment when it was new) which shall be free from any title retention or other security agreement or other encumbrance, and, by such removal and replacement, Borrower shall be deemed to have subjected such new Equipment to the lien of this Mortgage. Without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion, Borrower shall not undertake any development of the Property or any adjoining land owned or controlled by Borrower, nor construct any new improvements thereon, nor initiate or join in or consent to any new (or any change in any existing) private restrictive covenant, zoning ordinance, master plan, site plan, easement, or other public or private restrictions limiting or defining the uses which may be made of the Property, said adjoining land or any part thereof. Borrower shall complete and pay for any

6

permitted development and/or improvements undertaken on the Property within a reasonable time after commencing the same.

6.      Borrower shall do everything necessary to maintain the Premises in good condition and repair, shall operate the Premises in a first-class manner, shall not commit or suffer any waste, impairment, abandonment or deterioration of the Premises, shall promptly pay all utility fees for services provided to the Premises, and shall comply with (or cause compliance with) all applicable restrictive covenants and all statutes, ordinances and requirements of any governmental authorities having jurisdiction over the Premises or the use thereof. In the event of any fire or other casualty loss or damage to all or any part of the Premises, Borrower shall notify Bank within forty-eight (48) hours of such occurrence. Borrower shall promptly repair, restore, replace or rebuild any part of the Premises which may be damaged or destroyed by any casualty whatsoever (using the proceeds of the Insurance Policies as described in section 3 of this Mortgage) or which may be affected by any condemnation, alteration of grade, or other public or quasi-public taking or injury. If Borrower shall fail, neglect or refuse to repair or maintain the Premises as aforesaid, then Bank may at its option undertake such repairs or maintenance, and any funds advanced therefor by Bank shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

7.      As further security for the repayment of the Loan, Borrower hereby assigns and transfers to Bank all rents, income, issues and profits of the Premises and all right, title and interest of Borrower in and under all leases and tenancies and occupancy agreements of any nature whatsoever (and any extensions and renewals thereof) now or hereafter affecting the Premises (the "Leases"). Borrower hereby empowers Bank, its agents or attorneys, to demand, collect, sue for, receive, settle, compromise and give acquittances for all of the rents that may become due under the Leases and to avail itself of and pursue all remedies for the enforcement of the Leases and Borrower's rights thereunder that Borrower could have pursued but for this assignment. Bank is hereby vested with full power and authority to use all measures, legal and equitable, deemed necessary or proper by Bank to enforce this assignment, to collect the rents so assigned, and/or to cure any default and perform any covenant of Borrower as the landlord under any Leases, including without limitation the right to enter upon all or any part of the Premises and to take possession thereof to the extent necessary to exercise such powers. Bank shall have the right (but not the obligation) to advance any sums necessary to exercise such powers, which sums shall bear interest, shall be paid and shall be secured as provided in Paragraph 14. Borrower hereby empowers Bank to use and apply all such rents and other income of the Premises to the payment of the Loan and all interest thereon and any other indebtedness or liability of Borrower to Bank, and to the payment of the costs of managing and operating the Premises, including without limitation: (i) taxes, special assessments, insurance premiums, damage claims, and the costs of maintaining, repairing, rebuilding, restoring and making rentable any or all of the Premises; (ii) all sums advanced by Bank (with interest thereon) for the payment of such costs or for any other reason permitted by this Mortgage or any other Loan Document; and (iii) all reasonable costs, expenses and attorney's fees incurred by Bank in connection with the enforcement of this Mortgage and/or any Lease; all in such order of priority as Bank may deem appropriate in its sole discretion.

(a)     Bank shall not be obliged to pursue any of the rights or claims of Borrower assigned hereby, nor to perform or carry out any of the obligations of the landlord under any Lease, and Bank assumes no duty or liability whatsoever in connection with or arising from or growing out

7

of the covenants of Borrower in any Lease. This Mortgage shall not operate to make Bank responsible for the control, care, management or repair of all or any part of the Premises, nor shall it operate to make Bank liable for (i) the performance or carrying out of any of the terms or conditions of any Lease, (ii) any waste of the Premises by any tenant or any other person, (iii) any dangerous or defective condition of the Premises, nor (iv) any negligence in the management, upkeep, repair or control of all or any part of the Premises resulting in loss or injury or death to any tenant, licensee, employee or stranger. Borrower hereby indemnifies and holds Bank harmless against any and all liability, loss, claim, damage, costs and attorney's fees whatsoever which Bank may or might incur under any Lease or by reason of this assignment, and against any and all claims or demands whatsoever (and any related costs and attorney's fees) which may be asserted against Bank by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any Lease. Nothing herein contained shall be construed to make Bank a trustee or Bank in possession.

(b)     Borrower shall promptly deliver to Bank a true, correct and complete copy of each Lease as and when Borrower shall enter into the same, and Borrower shall procure and deliver to Bank estoppel letters or certificates from each tenant, in form and substance reasonably satisfactory to Bank, within thirty (30) days after Bank's request therefor. Borrower hereby represents and warrants to Bank (and shall be deemed to have represented and warranted to Bank upon and as of the date of delivering to Bank a copy of each Lease), except as previously or concurrently disclosed to and approved by Bank in writing: (i) that each such copy delivered (or to be delivered) to Bank is true, correct and complete and that taken together, such copies constitute a complete rent roll for the Property; (ii) that Borrower is the sole owner of the entire landlord's interest in each Lease and has not previously assigned or pledged any Lease or any interest therein to any person other than Bank; (iii) that all the Leases are in full force and effect and have not been altered, modified or amended in any manner whatsoever; (iv) that each tenant thereunder has accepted that tenant's respective premises and is paying rent on a current basis; (v) that no default exists on the part of such tenants or on the part of Borrower as landlord in their respective performances of the terms, covenants, provisions and agreements contained in the Leases; (vi) that no rent has been paid by any of the tenants for more than two (2) months in advance, excluding any tenant's security deposits; (vii) that Borrower is not indebted to any tenant in any manner whatsoever so as to give rise to any right of set-off against or reduction of the rents payable under any Lease; and (viii) that no payments of rents to accrue under any Lease has been or will be waived, released, reduced, discounted or otherwise discharged or compromised by Borrower directly or indirectly, whether by assuming any tenant's obligations with respect to other premises or otherwise.

(c)     Borrower covenants and agrees with Bank: (i) that each Lease shall remain in full force and effect irrespective of any merger of the interests of the landlord and tenant thereunder; (ii) that without the prior written consent of Bank, which it may grant or withhold in its sole discretion, Borrower shall not terminate, modify or amend any Lease or any guaranty thereof, nor grant any concessions in connection therewith (either orally or in writing) nor accept any surrender or cancellation thereof, and that any attempted termination, modification, concession, surrender or cancellation without such written consent shall be null and void; (iii) that Borrower shall not collect more than two (2) months' rent, income and/or profits arising or accruing under any Lease in advance of the due date for the same, except any tenants' security deposits, nor discount any future accruing rents, nor suffer or permit to arise in favor of any tenant any release of liability or any

8

right to withhold payment of rent, nor take any action or permit any omission or exercise any right of election which would in any way impair the value of any Lease or diminish any tenant's liability thereunder or have the effect of terminating or shortening the stated term of any Lease; (iv) that Borrower shall perform all of Borrower's covenants and agreements as landlord under each Lease and shall promptly furnish Bank with copies of any notice of alleged default on the part of Borrower as landlord received from any tenant thereunder; (v) that if requested by Bank, Borrower shall expeditiously and in good faith enforce the Leases and all remedies available to Borrower in case of default by the tenants thereunder; and (vi) that Borrower shall not execute any other assignment or pledge of any Lease or any interest therein or any of the rents thereunder, nor consent to any tenant's assignment of any Lease or any subletting thereunder, nor request, accept, consent to or agree to any subordination of any Lease to any mortgage other than this Mortgage now or hereafter affecting the Premises.

(d)    Although Borrower and Bank intend that this instrument shall be a present assignment, it is expressly understood and agreed that so long as no default shall exist under the Note, this Mortgage or any other Loan Document, Borrower may collect assigned rents and profits for not more than two (2) months in advance of the accrual thereof, but upon the occurrence of any such default, or at any time during its continuance, all rights of Borrower to collect or receive rents or profits shall wholly terminate upon notice from Bank. The tenants under all the Leases are hereby irrevocably authorized to rely upon and comply with (and shall be fully protected in so doing) any notice or demand by Bank for the payment to Bank of any rental or other sums which may be or thereafter become due under the Leases, or for the performance of any of the tenants' undertakings under the Leases, and none of them shall have any right or duty to inquire as to whether any default hereunder or under the Note or any Loan Document shall have actually occurred or is then existing.

8.     Borrower shall not grant any other lien or mortgage on all or any part of the Premises or any interest therein, nor make any further assignment of the leases and rentals of the Premises, without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion; any such unpermitted lien or mortgage or assignment by Borrower shall entitle Bank to accelerate the maturity of the Loan and foreclose this Mortgage. Any such other lien or mortgage or assignment shall be junior to this Mortgage and to all permitted tenancies now or hereafter affecting the Premises or any portion thereof and shall be subject to all renewals, extensions, modifications, releases, interest rate increases, future advances, changes or exchanges permitted by this Mortgage, all without the joinder or consent of such junior lienholder or Bank or assignee and without any obligation on Bank's part to give notice of any kind thereto. Borrower shall maintain in good standing any other mortgage or encumbrance to secure debt affecting any part of the Premises from time to time and shall not commit or permit or suffer to occur any default thereunder, nor shall Borrower accept any future advance under or modify the terms of any such mortgage or encumbrance which may then be superior to the lien of this Mortgage. Except for encumbrances permitted by Bank, Borrower shall not commit or permit or suffer to occur any act or omission whereby any of the security represented by this Mortgage shall be impaired or threatened, or whereby any of the Premises or any interest therein shall become subject to any attachment, judgment, lien, charge or other encumbrance whatsoever, and Borrower shall immediately cause any such attachment, judgment, lien, charge or other encumbrance to be discharged or otherwise bonded or transferred to other security. Borrower shall not directly or indirectly do anything or take any action which might prejudice any of the right,

9

title or interest of Bank in or to any of the Premises or impose or create any direct or indirect obligation or liability on the part of Bank with respect to any of the Premises.

9.    Borrower shall not cause or permit or suffer to occur any of the following events without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion, and if any of the same shall occur without such consent, then Bank shall have the right to accelerate the maturity of the Loan and foreclose this Mortgage: (a) if all or any portion of the legal or equitable title to all or any portion of the Premises or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law, except with respect to transfers to tenants under the leases; (b) if Borrower shall enter into any lease or other arrangement with any third party regarding the use or possession by such third party of all or any portion of the Premises, except with respect to transfers to tenants under the leases (regardless of whether such lease or arrangement includes an option to purchase); (c) in the case of any portion of the Premises owned by a corporation (or a partnership or joint venture or trust or other business entity), if any stock or partnership interest (including, without limitation, any transfer of stock in a corporate partner) or joint venture interest or beneficial interest in such owner shall be transferred in any manner, provided, however, that any such transfer shall be permitted and shall not require Bank's prior written approval so long as Eric D. Sheppard and Philip Wolman, collectively own fifty-one percent (51%) of the partnership interest in Borrower following such transfer, or if such stock or partnership interest or joint venture interest or beneficial interest shall be assigned, pledged, hypothecated, mortgaged or otherwise encumbered; or (d) if Borrower shall pay, repay or distribute any funds to any guarantor of the Loan or any other person directly or indirectly related to Borrower, (such as a stockholder, partner or beneficiary) except in the ordinary course of business in accordance with the Borrower's partnership agreement.

10.    From time to time and on demand, Borrower shall execute and deliver to Bank (and pay the costs of preparing and recording) any further instruments required by Bank to reaffirm, correct or perfect the evidence of the obligations secured hereby and the security interest of Bank in all the property intended to be mortgaged hereby, including but not limited to mortgages, security agreements, financing statements, assignments and renewal and substitution notes.

11.    Upon request made either personally or by mail, Borrower shall certify, by a duly acknowledged writing, to Bank or to any proposed assignee of this Mortgage, the amount of principal and interest and other sums then owing on the Loan and whether any offsets or defenses exist against the payment of the Loan. Borrower shall provide such estoppel certificate within five (5) days in the case of a personal request and within ten (10) days after Borrower's receipt of a mailed request. Borrower shall furnish to Bank, within one hundred twenty (120) days after the close of each fiscal year of Borrower, a financial statement of Borrower and of the income and expenses of the Premises (which shall include financial information regarding (i) the conduct of any business on the Premises, (ii) the operation of the Premises, and (iii) the leasing of the Premises), in such reasonable detail as Bank may request, accompanied by an original certification signed by a certified public accountant stating whether the financial statements have been audited, reviewed or compiled. Compiled statements shall be signed by the president, in the case of a corporation, by a general partner, in the case of a general or limited partnership, by the trustee, in the case of a trust, or, in the case of any other business entity, by a duly appointed officer or representative satisfactory to Bank. On demand, Borrower shall provide to Bank executed counterparts of any such leases and convenient

10

facilities for the audit and verification of any such statement. Borrower shall also promptly furnish to Bank any financial or other information regarding Borrower or the Premises required by any Loan Document or which Bank may reasonably request from time to time. Borrower shall also deliver to Bank complete copies of all of its federal income tax returns, accompanied by all forms and supporting schedules, within sixty (60) days of their filing. During any period that Borrower fails to comply with the provisions of this paragraph, or any guarantor of the Loan fails to deliver any financial documents required by the terms of the guaranty executed by such guarantor in favor of Bank in connection with the Loan, and regardless of whether Bank declares this Mortgage to be in default, without notice to Borrower, a fee of $50.00 per day until Borrower and/or guarantors comply with their obligations shall be due and payable. In addition, the Borrower shall provide to Bank the following (in form and substance satisfactory to the Bank): (i) a rent roll and operating statement for the Premises, including financial statements and balance sheets, within ninety (90) days of Borrower's fiscal year end; (ii) a copy of the Borrower's tax return (including all schedules) within sixty (60) days following filing; (iii) annual financial statements for each guarantor within sixty (60) days following each year end, a copy of each guarantor's tax return (including all schedules and K-1s) within sixty (60) days following filing and a personal financial statement for each guarantor within sixty (60) days of the end of each calendar year; and (iv) such additional financial information requested from time to time with respect to the Borrower and each guarantor.

12.     Whenever Borrower or Bank are obliged to give notice to the other, such notice shall be in writing and shall be given by United States mail, and notice shall be deemed effectively made when delivered or when the attempted initial delivery is refused or cannot be made because of a change of address of which the sending party has not been notified. Any notice to Bank shall be addressed to the attention of a senior vice president or higher officer. Until the designated addresses are changed by notice given in accordance with this paragraph, notice to either party shall be sent to the respective address set forth on the first page of this Mortgage.

13.     All of the principal and interest and other sums secured by this Mortgage shall immediately or at any time thereafter become due and payable without notice to any Obligor, and Bank shall immediately have all the rights accorded Bank by law and hereunder to foreclose this Mortgage or otherwise to enforce this Mortgage, the Note and any other Loan Document, upon the occurrence of any of the following defaults: (a) failure to pay any sum due under the Note and the expiration of the grace period (if any) provided in the Note for such payment; or (b) failure to repay any sum paid or advanced by Bank under the terms of this Mortgage or any other Loan Document (with interest thereon), as provided in Paragraph 14; or (c) failure to pay any tax, assessment, utility charge, or other charge against the Premises or any part thereof as and when required by this Mortgage; or (d) actual or threatened waste, impairment, abandonment, deterioration, removal, demolition, material alteration or enlargement of any building or other improvements on the Property, or the commencement of construction of any new building or other improvements on any part of the Property, in either case without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion; or (e) failure to obtain, assign, deliver or keep in force the policies of insurance required by this Mortgage or any other Loan Document; or (f) Borrower's failure or refusal to certify, within the time required by this Mortgage, the amount due under the Loan and whether any offsets or defenses exist against payment of the Loan; or (g) Borrower's filing for record, without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion, of any notice limiting the maximum principal amount that may be secured by this

11

Mortgage to an amount less than the limit set forth in the future advance clause on the first page of this Mortgage; or (h) any sale, transfer (whether voluntary or by operation of law), pledge, hypothecation or further encumbrancing of all or any part of the Premises or any interest therein or any interest in Borrower (except as permitted pursuant to section 9 above) or any corporate guarantor, or the additional assignment of all or any part of the rents, income or profits arising therefrom, in either case without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion; or (i) Borrower's failure to remove any involuntary lien on the Premises or any part thereof within fifteen (15) days after its filing, or the filing of any suit against the Premises upon any claim or lien other than this Mortgage (whether superior or inferior to this Mortgage); or (j) Borrower's failure to comply within ten (10) days with a requirement, order or notice of violation of a law, ordinance, or regulation issued or promulgated by any political subdivision or governmental department claiming jurisdiction over the Premises or any operation conducted on the Property (or, if such order or notice provides a time period for compliance, Borrower's failure to comply within such period), or, in the case of a curable noncompliance requiring longer than the applicable time period for its cure, Borrower's failure to commence to comply with said order or notice within said period or failure thereafter to pursue such cure diligently to completion; or (k) the issuance of any order by the State of Florida, or any subdivision, instrumentality, administrative board or department thereof, declaring unlawful or suspending any operation conducted on the Premises that is not vacated within thirty (30) days from the issuance thereof; or (l) the filing by the United States of America or any instrumentality thereof in any court of competent jurisdiction of any notice of intention to acquire under the power of eminent domain any estate less than an estate in fee simple in the entire Property, or the recording by the State of Florida, any instrumentality thereof or any other person with eminent domain powers, of a notice of taking of any estate less than an estate in fee simple in the entire Property; or (m) if any representation, warranty, affidavit, certificate or statement made or delivered to Bank by or on behalf of any Obligor from time to time in connection with the Loan or this Mortgage or any other Loan Document shall prove false, incorrect or misleading in any respect deemed material by Bank and such default is not cured within thirty (30) days following notice thereof; or (n) sixty (60) days following the death or mental incapacity of any Obligor who is a natural person and the failure of the Borrower to: (i) cause the estate of such Obligor to acknowledge the obligations to the Bank; and (ii) provide an additional Obligor acceptable to the Bank, or the dissolution or merger or consolidation or termination of existence of any other Obligor, or the failure or cessation or liquidation of the business of any Obligor, or if the person(s) controlling any Obligor which is a business entity shall take any action authorizing or leading to the same; or (o) any default by any Obligor in the payment of any indebtedness for borrowed money (whether direct or contingent and whether matured or accelerated) to Bank or to any person whomsoever, or if any Obligor shall become insolvent or unable to pay such Obligor's debts as they become due; or (p) the disposition or transfer or exchange of all or substantially all of any Obligor's assets for less than fair market value, or the issuance of any levy, attachment, charging order, garnishment or other process against any property of any Obligor, or the filing of any lien against any such property (and the expiration of any grace period provided in any Loan Document for the discharge of such lien); or (q) if any Obligor shall make an assignment for the benefit of creditors, file a petition in bankruptcy, apply to or petition any tribunal for the appointment of a custodian, receiver, intervenor or trustee for such Obligor or a substantial part of such Obligor's assets, or if any Obligor shall commence any proceeding under any bankruptcy, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction.

12

whether now or hereafter in effect, or if any Obligor shall by act or omission approve, consent to or acquiesce in the filing of any such petition or application against such Obligor or the appointment of any such custodian, receiver, intervenor or trustee or the commencement of any such proceeding against such Obligor or the entry of an order for relief with respect to such Obligor, or if any such petition or application shall have been filed or proceeding commenced against any Obligor which remains undismissed for sixty (60) days or more or in which an order for relief is entered, or if any Obligor shall suffer any such appointment of a custodian, receiver, intervenor or trustee to continue undischarged for sixty (60) days or more; or (r) if any Obligor shall have concealed, transferred, removed, or permitted to be concealed or transferred or removed, any part of such Obligor's property with intent to hinder, delay or defraud any of such Obligor's creditors, or if any Obligor shall have made or suffered a transfer of any of such Obligor's properties which may be invalid under any bankruptcy, fraudulent conveyance, preference or similar law, or if any Obligor shall have made any transfer of such Obligor's properties to or for the benefit of any creditor at a time when other creditors similarly situated have not been paid; or (s) the failure to obtain any permit, license, approval or consent from, or to make any filing with, any governmental authority (or the lapse or revocation or rescission thereof once obtained or made) which is necessary in connection with the Loan, any Loan Document or the enforcement thereof, or if it shall become unlawful for Bank to make or maintain the Loan or for any Obligor to perform any of such Obligor's obligations under any Loan Document; or (t) the existence of any uncured default under any other mortgage or encumbrance affecting any part of the Premises then encumbered by this Mortgage, or Borrower's acceptance of any future advance under, or modification of the terms of, any such other mortgage or encumbrance which may then be superior to the lien of this Mortgage; or (u) Bank's election to accelerate the maturity of the Loan under the provisions of any other Loan Document; or (v) if Borrower or any other Obligor shall fail to pay when due any indebtedness for money that Borrower or such other Obligor borrowed following the expiration of any grace period with respect thereto; or (w) if any change or event shall occur which in Bank's exclusive judgment materially impairs any security for the Loan, materially increases Bank's risk in connection with the Loan, or indicates that any Obligor may be unable to perform such Obligor's obligations under any Loan Document and Borrower is unable to satisfy Bank's concerns within thirty (30) days form the receipt of written notice by the Bank; or (x) the failure of the Borrower, for collateral purposes, to maintain the Borrower's accounts with respect to the Premises with the Bank; or (y) any default in the observance or performance of any other covenant or agreement of any Obligor in this Mortgage or any other Loan Document, the occurrence of any other event prohibited by the terms of this Mortgage or any other Loan Document, or the violation of any other provision of this Mortgage or any other Loan Document, including any commitment letters. No consent or waiver expressed or implied by Bank with respect to any default under this Mortgage shall be construed as a consent or waiver with respect to any further default of the same or a different nature; and no consent or waiver shall be deemed or construed to exist by reason of any curative action initiated by Bank or any other course of conduct or in any other manner whatsoever except by a writing duly executed by Bank, and then only for the single occasion to which such writing is addressed. In order to accelerate the maturity of the Loan because of Borrower's failure to pay any tax, assessment, insurance premium, charge, liability, obligation or encumbrance upon the Premises as required by this Mortgage, or in order to accelerate because of any other default, Bank shall not be required to pay the same or to advance funds to cure the default, notwithstanding Bank's option under this Mortgage or any other Loan Document to do

13

so; no such payment or advance by Bank shall be deemed or construed a waiver of Bank's right to accelerate the maturity of the Loan on account of such failure or other default.

14.    In the event of any default in the performance of any of Borrower's covenants or agreements contained in this Mortgage or any other Loan Document or the violation of any term thereof, Bank shall have the right (but in no event the obligation) at its option to cure the default or take any other action Bank deems necessary or desirable to protect its security (including without limitation the payment of any taxes, assessments, insurance premiums, charges, liens or encumbrances required of Borrower under this Mortgage), without thereby waiving any rights or remedies otherwise available to Bank. If Bank shall elect to advance at any time any sum(s) for the protection of its security or for any other reason permitted or provided by any of the terms of this Mortgage or any other Loan Document, then such sum(s) shall be deemed Loan funds and shall be secured by this Mortgage and shall bear interest until paid at the "Default Rate" provided in the Note commencing on the date they are advanced by Bank. If advanced by Bank before the (natural or accelerated) maturity date of the Loan, such sum(s) shall be due and payable by Borrower on such maturity date or ten (10) days after Borrower first learns of the advance, whichever is earlier, but if advanced after the (natural or accelerated) maturity date, such sum(s) shall be due and payable immediately. Bank's lien on the Premises for such advances shall be superior to any right or title to, interest in, or claim upon all or any portion of the Premises junior to the lien of this Mortgage. Without the prior written consent of Bank, which Bank may grant or withhold in its sole discretion, Borrower shall not file for record any notice limiting the maximum principal amount that may be secured by this Mortgage to an amount less than the limit set forth in the future advance clause on the first page of this Mortgage.

15,    In any action to foreclose this Mortgage, or upon the actual or threatened waste to any part of the Premises, Bank shall have the right to apply without notice for the appointment of a receiver of the Premises and the rents and profits thereof, and Bank shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due Bank or the solvency of any Obligor. To the extent permitted by law, Borrower hereby waives any right to object to the appointment of a receiver as aforesaid and expressly consents that such appointment shall be made as an admitted equity and as a matter of absolute right to Bank.

16.    The rights and remedies of Bank under this Mortgage or any other Loan Document or applicable law shall be cumulative and concurrent and may be pursued separately, successively or together against any Obligor(s), the Premises, any other collateral for the Loan, or any one or more of the foregoing, all at the sole discretion of Bank, and may be exercised as often as occasion therefor shall arise, all to the maximum extent permitted by law. Bank's pursuit of any remedy shall not preclude pursuit of any other remedy until Bank shall have recovered all sums due Bank, together with the appropriate interest thereon and all costs of collection, including attorney's fees and appellate attorney's fees, with interest thereon. Neither Borrower nor anyone claiming through or under Borrower shall set up, claim or seek to take advantage of any appraisement, valuation, stay, moratorium, extension, exemption or redemption laws, now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage or the sale of the Premises. To the maximum extent permitted by law, the Obligors, for themselves and all who may claim through or under any of them, hereby severally waive the benefit of all such laws and waive any and all rights to

14

have the Premises or any other collateral for the Loan marshaled upon any foreclosure of this Mortgage or any other instrument securing the Loan, and hereby severally agree that the Premises and any such other collateral may be sold as an entirety or in such parcels, in such manner and in such order as Bank in its sole discretion may elect. In the event that Borrower should seek protection under the U.S. Bankruptcy Code, or should Borrower be adjudicated a Debtor thereunder, Borrower hereby consents to relief from the automatic stay pursuant to 11 USC §362(d) to allow Bank to proceed to, and obtain, a final judgment of foreclosure of this Mortgage, to complete a foreclosure sale pursuant thereto, to cause the issuance of a certificate of title pursuant thereto, and to otherwise take all such actions as Bank may elect in its sole discretion in pursuance of the other rights and remedies available to Bank in the case of a default under this Mortgage. Borrower hereby waives any protection under 11 U.S.C. §362(a).

17.   Borrower shall pay any and all reasonable costs, expenses and attorney's fees incurred by Bank (regardless of whether in connection with any action, proceeding or appeal) to sustain the lien of this Mortgage or its priority, to protect or enforce any of Bank's rights under this Mortgage or under any other Loan Document, to recover any indebtedness secured hereby, to contest or collect any award or payment in connection with the taking or condemnation of all or any part of the Premises, or for any title examination or abstract preparation or title insurance policy relating to the Property, and all such sums shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

18.   Notwithstanding any taking by eminent domain, any alteration of the grade of any street, or any other injury to or decrease in value of the Premises or any portion thereof caused by any public or quasi-public authority or person, Borrower shall continue to pay interest on the Loan and all other sum(s) secured hereby until Bank shall have actually received the award or payment for such taking or alteration or injury and shall have applied the same against the Loan. Bank at its option may retain any such award or payment and apply all or part of the same toward payment of the Loan (in any order of priority Bank may deem appropriate in its sole discretion), or Bank may disburse all or part of such award or payment to Borrower for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking or alteration or injury, or for any other purpose or object satisfactory to Bank in its sole discretion. If all of the Property is so taken but the award or payment therefor received by Bank is insufficient to pay in full all sums then secured by this Mortgage, then at Bank's option the unpaid balance shall be immediately due and payable.

19.   If at any time the State of Florida shall determine that the intangible tax paid in connection with this Mortgage is insufficient or that the documentary stamps affixed hereto are insufficient, and that additional intangible tax should be paid or that additional stamps should be affixed, then Borrower shall pay for the same, together with any interest or penalties imposed in connection with such determination, and Borrower hereby agrees to indemnify and hold Bank harmless therefrom. If any such sums shall be advanced by Bank, they shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

20.   If any federal, state or local law shall hereafter be enacted which (a) for the purpose of ad valorem taxation shall deduct the amount of any lien from the value of real property, or (b) shall impose on Bank the payment of all or any part of the taxes or assessments or charges required to be

15

paid hereunder by Borrower, or (c) shall change in any way the laws for the taxation of mortgages or debts secured thereby or Bank's interest in the Premises, or shall change the manner of collecting such taxes, so as to affect this Mortgage or the debt secured hereby or the holder thereof, then upon demand Borrower shall pay such taxes or assessments or charges imposed on Bank or shall reimburse Bank therefor; provided, however, that if in the opinion of Bank's counsel the requirement that Borrower make such payments might be unlawful or might result in the imposition of interest in excess of the maximum lawful rate, then Bank shall have the right to declare the Loan and all other sums secured hereby to be due and payable thirty (30) days after notice thereof to Borrower.

21.    This Mortgage is a "security agreement" and creates a "security interest" in favor of Bank as a "secured party" with respect to all property included in the Premises which is covered by the Uniform Commercial Code. Upon default under the Note, this Mortgage or any other Loan Document, Bank may at its option pursue any and all rights and remedies available to a secured party with respect to any portion of the Premises so covered by the Uniform Commercial Code, or Bank may at its option proceed as to all or any part of the Premises in accordance with Bank's rights and remedies in respect of real property. Borrower and Bank agree that the mention of any portion of the Premises in a financing statement filed in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that all items of collateral described in this Mortgage are part of the real estate encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the improvements or whether serial numbers are used for the better identification of certain items of Equipment. Specifically, the mention in any such financing statement of (a) the rights in or the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Borrower's interest as lessor in any present or future lease or right to income growing out of the use or occupancy of the Property or improvements thereto, whether pursuant to lease or otherwise, or (d) any other item included in the definition of the Premises, shall never be construed to alter any of the rights of Bank as determined by this Mortgage or to impugn the priority of Bank's lien and security interest with respect to the Premises; such mention in a financing statement is declared to be for the protection of Bank in the event any court shall hold that notice of Bank's priority of interest with respect to any such portion of the Premises must be filed in the Uniform Commercial Code records in order to be effective against or to take priority over any particular class of persons, including but not limited to the federal government and any subdivision or instrumentality of the federal government. This Mortgage or a carbon, photographic copy or other reproduction hereof or of any financing statement shall be sufficient as a financing statement.

22.    Any payment made in accordance with the terms of the Note or this Mortgage by any person at any time liable for the payment of the whole or any part of the sums now or hereafter secured by this Mortgage, by any subsequent owner of the Premises, or by any other person whose interest in the Premises might be prejudiced in the event of a failure to make such payment (or by any partner, stockholder, officer or director of any such person), shall be deemed, as between Bank and all such persons who at any time may be so liable or may have an interest in the Premises, to have been made on behalf of all such persons. Bank's acceptance of any payment which is less than full payment of all amounts then due and payable to Bank, even if made by one other than the person liable therefor, shall not constitute a waiver of any rights or remedies of Bank.

16

23.    Borrower consents and agrees that, at any time and from time to time without notice, (a) Bank and the owner(s) of any collateral then securing the Loan may agree to release, increase, change, substitute or exchange all or any part of such collateral, and (b) Bank and any person(s) then primarily liable for the Loan may agree to renew, extend or compromise the Loan in whole or in part or to modify the terms of the Loan in any respect whatsoever. Borrower agrees that no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification, no sale of the Premises or any part thereof, no forbearance on the part of Bank, nor any other indulgence given by Bank (whether with or without consideration) shall relieve or diminish in any manner the liability of any Obligor, nor adversely affect the priority of this Mortgage, nor limit or prejudice or impair any right or remedy of Bank. All Obligors and all those claiming by, through or under any of them hereby jointly and severally waive any and all right to prior notice of, and any and all defenses or claims based upon, any such release, increase, change, substitution, exchange, renewal, extension, compromise, modification, sale, forbearance or indulgence.

24.    This Mortgage shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, excepting only that federal law shall govern to the extent it may permit Bank to charge, from time to time, interest on the Loan at a rate higher than may be permissible under applicable Florida law.

25.    In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Bank as consideration for the Loan exceed the limits (if any) imposed or provided by the law applicable from time to time to the Loan for the use or detention of money or for forbearance in seeking its collection; Bank hereby waives any right to demand any such excess. In the event that the interest provisions of the Note or any exactions provided for in the Note, this Mortgage or any other Loan Document shall result at any time or for any reason in an effective rate of interest that exceeds the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall automatically be reduced to such limit and all sums received by Bank in excess of those lawfully collectible as interest shall be applied against the principal of the Loan immediately upon Bank's receipt thereof, with the same force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Bank had agreed to accept such extra payment(s) as a premium-free prepayment or prepayments.

26.    Any provision of this Mortgage which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

27.    Bank and any persons authorized by Bank shall have the right, from time to time upon reasonable notice to Borrower, to enter and inspect the Premises. At any time after default under the terms of the Note, this Mortgage or any other Loan Document, if any of the buildings, improvements or Equipment now or hereafter located on or in the Property shall be unprotected or unguarded, or if any improved portion of the Property shall be allowed to remain vacant or deserted, then at its option, Bank may employ watchmen for the Property and expend any monies deemed necessary by Bank to protect the Property and the buildings, improvements and Equipment thereon from waste, vandalism and other hazards, depredation or injury, and any sums expended by Bank for such purpose shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

17

28.    Borrower agrees that the management of the Premises shall be conducted at all times by Borrower or by such other professional property management organization as Bank shall approve in writing, which Bank may grant or withhold in its sole, reasonable discretion. At any time after default under the Note, this Mortgage or any other Loan Document, if Bank shall determine in its sole discretion that the management or maintenance of the Premises is unsatisfactory, then Borrower shall employ as managing agent of the Premises such person(s) as Bank may designate from time to time, at Borrower's sole expense and for the duration of the default. Any sums advanced by Bank in connection with such managing agent shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

29.    In the event Bank shall be named as a party to any lawsuit brought at any time involving any Obligor or with respect to the Premises, this Mortgage or the Loan, or if Borrower shall incur any costs or expenses in connection with any lawsuit involving any Obligor or the Premises in which Bank is not a party (i.e., if Bank is called upon to produce documentation, information, or to provide testimony), then regardless of the type or merits of such lawsuit, Borrower shall defend Bank and indemnify and hold Bank fully harmless from, and shall reimburse Bank for any and all claims, demands, damages, liabilities, judgments, losses, costs, expenses and attorney's fees incurred by Bank and arising out of or resulting from any such lawsuit or any appeal in connection therewith, including all internal costs for time incurred by Bank's officers and other employees calculated at Bank's standard rates (which are available to Borrower upon Borrower's request). This provision shall survive the satisfaction or other termination of this Mortgage.

30.    Bank is hereby subrogated (a) to the lien(s) of each and every mortgage, lien or other encumbrance on all or any part of the Premises which is fully or partially paid or satisfied out of the proceeds of the Loan, and (b) to the rights of the owner(s) and holder(s) of any such mortgage, lien or other encumbrance. The respective rights under and priorities of all such mortgages, liens or other encumbrances shall be preserved and shall pass to and be held by Bank as security for the Loan, to the same extent as if they had been duly assigned by separate instrument of assignment and notwithstanding that the same may have been canceled and satisfied of record.

31.    In order to induce Bank to make the Loan, Borrower represents and warrants that: (a) except as previously or concurrently disclosed in writing to Bank, there are no actions, suits or proceedings pending or threatened against or affecting any Obligor or any portion of the Premises, or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority, and no Obligor is in default under any other indebtedness or with respect to any order, writ, injunction, decree, judgment or demand of any court or any governmental authority; (b) the execution and delivery of the Note, this Mortgage and all other Loan Documents do not and shall not (i) violate any provisions of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to any Obligor, nor (ii) result in a breach of, or constitute a default under, any indenture, bond, mortgage, lease, instrument, credit agreement, undertaking, contract or other agreement to which any Obligor is a party or by which any of them or their respective properties may be bound or affected; (c) the Note, this Mortgage and all other Loan Documents constitute valid and binding obligations of the Obligor(s) executing the same, enforceable against such Obligor(s) in accordance with their respective terms; (d) all financial statements of the Obligors previously delivered to Bank have been prepared in accordance with generally accepted accounting principles consistently applied and fairly

18

present the correct respective financial conditions of the Obligors as of their respective dates, and the foregoing shall be true with respect to all financial statements of the Obligors delivered to Bank hereafter; (e) there is no fact that the Obligors have not disclosed to Bank in writing that could materially adversely affect their respective properties, businesses or financial conditions or the Premises or any other collateral for the Loan; (f) the Obligors have duly obtained all permits, licenses, approvals and consents from, and made all filings with, any governmental authority (and the same have not lapsed nor been rescinded or revoked) which are necessary in connection with the execution or delivery or enforcement of this Mortgage or any other Loan Document or the performance of any Obligor's obligations thereunder; (g) the proceeds of the Loan are not being used to purchase or carry any "margin stock" within the meaning of Regulation "U" of the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose; and (h) each extension of credit secured by this Mortgage is exempt from the provisions of the Federal Consumers Credit Protection Act (Truth-in-Lending Act) and Regulation "Z" of the Board of Governors of the Federal Reserve System, because Borrower is a person fully excluded therefrom, and/or because said extension of credit is only for business or commercial purposes of Borrower and is not being used for personal, family, household or agricultural purposes. Borrower acknowledges and agrees that Bank is relying on the representations and warranties in this Mortgage and all other Loan Documents as a precondition to making the Loan, and that all such representations and warranties shall survive the closing of the Loan and any bankruptcy proceedings.

32.    If Borrower is a corporation, partnership or other business entity, then Borrower hereby represents and warrants, in order to induce Bank to make the Loan, that: (a) Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction of its creation and the state of Florida; (b) Borrower has all requisite power and authority (corporate or otherwise) to conduct its business, to own its properties, to execute and deliver the Note and this Mortgage and all other Loan Documents, and to perform its obligations under the same; (c) the execution, delivery and performance of the Note, this Mortgage and all other Loan Documents have been duly authorized by all necessary actions (corporate or otherwise) and do not require the consent or approval of Borrower's stockholders (if a corporation) or of any other person or entity whose consent has not been obtained; and (d) the execution, delivery and performance of the Note, this Mortgage and all other Loan Documents do not and shall not conflict with any provision of Borrower's by-laws or articles of incorporation (if a corporation), partnership agreement (if a partnership) or trust agreement or other document pursuant to which Borrower was created and exists.

33.    Hazardous Waste. "Hazardous Waste" as used herein shall mean and include those elements or compounds which are contained in the list of hazardous substances adopted by the United States Environmental Protection Agency (EPA) and the list of toxic pollutants designated by Congress or the EPA or defined by any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material as now or at any time in effect.

(a)    Representations and Warranties. Borrower specifically represents and warrants that the use and operation of the Premises comply with all applicable environmental laws, rules and regulations, including, without limitation, the Federal Resource Conservation and Recovery Act and the Comprehensive Environmental Response Compensation and Liability Act of 1980 and

19

all amendments and supplements thereto and Borrower shall continue to comply therewith at all times. Specifically, and without limiting the generality of the foregoing, there are not now and there shall not in the future be any Hazardous Waste located or stored in, upon or at the Premises, and there are not now nor shall there be at any time any releases or discharges from the Premises.

(b)    Indemnification.

(i)    Borrower hereby agrees to indemnify Bank and hold Bank harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including attorneys' fees for attorneys of Bank's choice, costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Bank by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the Premises of any Hazardous Waste (including, without limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including attorney's fees for attorneys of Bank's choice, costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any federal, state or local "Superfund" or "Superlien" laws, and any and all other statutes, laws, ordinances, codes, rules, regulations, orders or decrees regulating, with respect to or imposing liability, including strict liability, substances or standards of conduct concerning any hazardous waste), regardless of whether within Borrower's control.

(ii)    The aforesaid indemnification and hold harmless agreement shall benefit Bank from the date hereof and shall continue notwithstanding payment, release or discharge of this Mortgage or the indebtedness, and, without limiting the generality of the foregoing such obligations shall continue for the benefit of Bank and any subsidiary of Bank during and following any possession of the Premises hereby or any ownership of the Premises thereby, whether arising by foreclosure or deed in lieu of foreclosure or otherwise, such indemnification and hold harmless agreement to continue forever.

(c)    Notice of Environmental Complaint. If Borrower shall receive any notice of: (i) the happening of any material event involving the spill, release, leak, seepage, discharge or cleanup of any Hazardous Waste on the Land or Premises in connection with Borrower's operations thereon; or (ii) any complaint, order, citation or material notice with regard to air emissions, water discharges or any other environmental, health or safety matter affecting Borrower (an "Environmental Complaint") from any person or entity, then Borrower shall immediately notify Bank orally and in writing of such notice.

(d)    Bank's Reserved Rights.  In the event of receipt of an Environmental Complaint, Bank shall have the right, but not the obligation (and without limitation of Bank's rights under this Mortgage) to enter onto the Premises or to take such other actions as it shall deem necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Waste or Environmental Complaint following receipt of any notice from any person or entity having jurisdiction asserting the existence of any Hazardous Waste or an Environmental Complaint pertaining to the Premises or any part thereof which, if true, could result in an order, suit or other action against Borrower and/or which, in Bank's sole opinion, could

20

jeopardize its security under this Mortgage. All reasonable costs and expenses incurred by Bank in the exercise of any such rights shall be secured by this Mortgage and shall be payable by Borrower upon demand.

(e)    Environmental Audits. If Bank shall have reason to believe that Hazardous Waste has been discharged on the Premises, Bank shall have the right, in its sole discretion, to require Borrower to perform periodically to Bank's satisfaction (but not more frequently than annually unless an Environmental Complaint shall be then outstanding), at Borrower's expense, an environmental audit and, if deemed necessary by Bank, an environmental risk assessment of: (i) the Premises; (ii) hazardous waste management practices and/or (iii) Hazardous Waste disposal sites used by Borrower. Said audit and/or risk assessment must be by an environmental consultant satisfactory to Bank. Should Borrower fail to perform any such environmental audit or risk assessment within thirty (30) days after Bank's request, Bank shall have the right to retain an environmental consultant to perform such environmental audit or risk assessment. All costs and expenses incurred by Bank in the exercise of such rights shall be secured by this Mortgage and shall be payable by Borrower upon demand.

(f)    Breach. Any breach of any warranty, representation or agreement contained in this Section shall be an Event of Default and shall entitle Bank to exercise any and all remedies provided in this instrument, or otherwise permitted by law.

34.    Borrower will keep the Property in good order, repair and condition, reasonable wear and tear excepted and shall not commit or permit any waste. Borrower will also comply with all applicable laws, statutes, ordinances, codes and judicial and administrative decisions (including without limitation and as applicable, all such laws, statutes, judicial and administrative decisions relating to the physical accessibility requirements of Title III of the Americans with Disabilities Act of 1990 (as amended) and the implementing regulations promulgated thereunder by the Department of Justice and the Americans with Disabilities Act Accessibility Guidelines (ADAAG) associated therewith and the applicable ANSI Standards under the Fair Housing Act (as amended) and all applicable regulations) of all applicable state, federal or local governmental entities (the "Requirements"). Borrower will not make material changes to the Property, change the use of the Property, or allow a change in zoning of the Property without the Bank's prior written consent. Borrower shall immediately provide notice of proposed zoning changes to the Bank.

35.    In addition to the Loan, this Mortgage is given to secure any and all obligations and liabilities of Borrower and/or any other Obligor, to Bank, including but not limited to any obligations and/or liabilities arising by virtue of any security agreement, promissory note or other agreement between Borrower and/or any other Obligor and Bank, and for all other obligations of said parties to Bank, whether contingent or absolute, direct or indirect, whether joint or several and regardless of however or whenever created. At the option of Bank at any time, any or all of such indebtedness may be deemed a future advance made under this Mortgage.

36.    Whenever the context of any provision of this Mortgage shall so require, words in the singular shall include the plural, words in the plural shall include the singular, and pronouns of any gender shall include the other genders. Captions and headings in this Mortgage are for convenience only and shall not affect its interpretation. All references in this Mortgage to Exhibits, Schedules,

21

Filed 02/22/13    Page 23 of 26

paragraphs and subparagraphs refer to the respective subdivisions of this Mortgage, unless the reference expressly identifies another document. Wherever used in this Mortgage, unless the context clearly indicates a contrary intention or unless this Mortgage specifically provides otherwise: (a) the term "Borrower" shall mean "Borrower or any subsequent owner or owners of the Premises"; (b) the term "Bank" shall mean "Bank or any subsequent holder(s) of this Mortgage"; (c) the term "Note" shall mean "the Note, any renewal notes and any additional notes hereafter to be issued and secured by this Mortgage pursuant to the future advance provision hereof"; (d) the term "Loan" shall mean "the Loan and any future or additional advances made by Bank from time to time for any reason permitted or provided by the terms of this Mortgage or any other Loan Document"; and (e) the term "person" shall mean "an individual, corporation, partnership, limited partnership, unincorporated association, joint stock corporation, joint venture or other legal entity".

37.    Time is of the essence of all provisions of this Mortgage. Borrower hereby waives all right of homestead exemption (if any) in the Premises. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several, and wherever the term "Borrower" is used it shall be deemed to refer to such persons jointly and severally. If Borrower is a partnership, then all general partners in Borrower shall be liable jointly and severally liable for the covenants, agreements, undertakings and obligations of Borrower in connection with the Loan, notwithstanding any contrary provision of the partnership laws of the State of Florida. This Mortgage shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns, and it shall inure to the benefit of Bank and its successors and assigns and to the benefit of Borrower and Borrower's heirs, personal representatives and permitted successors and assigns. This Mortgage may be executed in any number of counterparts, each of which shall be deemed an original, but all of which, together, shall constitute but one instrument. This Mortgage cannot be changed except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

38.    In addition to any other covenant or obligation of the Borrower hereunder, the Borrower shall, during the term of the Loan: (a) maintain and preserve its existence and all rights, privileges, franchises and other authority for the conduct of its business; (b) maintain its properties and facilities in good order; (c) pay and discharge all taxes, assessment and governmental charges in a timely manner, except those being contested in good faith; (d) inform Bank within ten (10) days of any actual or potential contingent liabilities; (e) maintain proper casualty, liability and business interruption insurance in amounts reasonably acceptable to Bank, naming Bank as loss payee as its interest may appear; (f) comply with all governmental laws, codes and ordinances and applicable regulatory requirements; (g) permit Bank the right to inspect all records relating to the Property; (h) maintain a minimum global debt service coverage ratio of 1.20 to 1:00, to be tested annually; (i) establish and maintain at Bank an operating account and maintain a depository relationship with Bank that Bank deems satisfactory, which Borrower acknowledges was a material inducement for Bank to extend credit to Borrower on the terms set forth in the Loan Documents; (j) subordinate any and all loans by Borrower's shareholders or any Obligor under the Loan Documents to the indebtedness of Borrower to Bank; (k) promptly notify Bank of any and all material events affecting the real property that secures repayment of Borrower's obligations to Bank, including, but not limited to, zoning changes, permits obtained, site plan approvals, pre-leases and equity investments in any project contemplated to involve such real property; and (l) not, without the prior written consent of Bank: (i) incur other debt, direct or indirect; (ii) permit to exist a lien on or pledge any of its assets;

22

promptly pay when due all lawful claims, whether for labor, materials or otherwise; and/or (viii) own any assets other than the Property and assets incidental thereto.

39.    BORROWER AND BANK HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.    BORROWER ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE BANK IN EXTENDING CREDIT TO THE BORROWER, THAT THE BANK WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT BORROWER HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTANDS THE LEGAL EFFECT OF THIS WAIVER.

WITNESS the due execution hereof as of the date first above written.

Signed, sealed and delivered in
the presence of these witnesses:

WSG CORAL SPRINGS, LP

By:  WSG CORAL SPRINGS GP, LLC,
Its:  General Partner

By:
Witness:
Print Name:
Print Name: Eric D. Sheppard
Title: Manager
Witness:
Address: 4YY8 Arthur Gadfrey Rd.
Print Name: Joanne Hurley
Miami Beach, FL 33140

STATE OF FLORIDA  }
COUNTY OF DADE  }

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in the County aforesaid to take acknowledgments, the foregoing instrument was acknowledged before me by Eric D. Sheppard, the Manager of WSG CORAL SPRINGS GP, LLC, a Delware limited liability company,

22

general partner of WSG CORAL SPRINGS, LP, a Delaware limited partnership, voluntarily under authority duly vested in him/her by said limited liability company and that the seal affixed thereto is the true corporate seal of said corporation. He/She is (personally known) to me or who has produced _____ as identification.

WITNESS my hand and official seal in the County and State last aforesaid this 24th day of _____ 2006.

KELLIE MARQUES
Comm# DD0429755
Expires 8/4/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

Notary Public

Kellie Marques

Typed, printed or stamped name of Notary Public

My Commission Expires: 5.4.2009

S:\kellie\Development Loan Closings\Alafaya – Colonial Bank\LoanDocs\MTG ALR & SA_4.16.DOC

23

## EXHIBIT 'A'

**PARCEL 1:**

Lots 7, 8, 9, 10 & 11, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

**PARCEL 2:**

The East 1/2 of the West 1/2 of the Southwest 1/4 of the Southwest 1/4 and the Northwest 1/4 of the Southwest 1/4 in Section 22, Township 22 South, Range 31 East, Orange County, Florida.

**LESS AND EXCEPT:**

The following described parcel sold and conveyed to the United States Postal Service by Deed dated March 29, 1988 and recorded April 5, 1988 in Official Records Book 3970, page 2428:

Starting at the Northeast corner of the Northwest quarter of the Southwest quarter of Section 22, Township 22 South, Range 31 East, Orange County, Florida, run South 00 degrees 50 minutes 54 seconds East, along the East line of the Northwest quarter of the Southwest quarter of said Section 22 and the Westerly right-of-way line of Alafaya Trail, 896.05 feet to the Point of Beginning; thence South 88 degrees 40 minutes 21 seconds West, parallel with the South line of the Northwest quarter of the Southwest quarter of said Section 22, 660 feet; thence South 00 degrees 50 minutes and 54 seconds East, parallel with East line of the Northwest quarter of the Southwest quarter of said Section 22, 365.00 feet to a point on the South line of the Northwest quarter of the Southwest quarter of said Section 22; thence North 88 degrees 40 minutes 21 seconds East along said Southerly line 660.00 feet to a point on the Westerly right-of-way line of Alafaya Trail; thence North 00 degrees 50 minutes 54 seconds West, along said Westerly right-of-way line 365.00 feet to the Point of Beginning; and

**LESS AND EXCEPT:**

Right of Way for O'Berry Hoover Road on the West.