# EXHIBIT E

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT, IN AND FOR ORANGE
COUNTY, FLORIDA.

CASE NO. 2011-CA-000033-O

BRANCH BANKING AND TRUST
COMPANY,

       Plaintiff,

vs.

WSG CORAL SPRINGS, LP, ET AL.,

       Defendants.

_____/

## STIPULATION AND AGREED ORDER

### Stipulation

Plaintiff, Branch Banking and Trust Company, as successor in interest to Colonial Bank ("Colonial") by acquisition of assets from the FDIC as Receiver for Colonial Bank ("BBT"), and defendants WSG Coral Springs, LP, a Delaware limited partnership ("Coral"), Philip Wolman ("Wolman"), and Eric D. Sheppard ("Sheppard"), (Coral, Wolman and Sheppard are collectively referred to as "Obligors"), stipulate and agree as follows:

1.    This is an action against:

    a.    Coral upon a promissory note in favor of BBT and to foreclose a mortgage and security agreement encumbering certain real property located in Orange County, Florida, securing repayment of Coral's indebtedness to BBT, as is more specifically described in the mortgage, as modified.

    b.    Wolman and Sheppard upon their guaranty of the obligations of Coral evidenced by a personal guaranty in favor of BBT.

{M0131376.15 }

CASE NO. 2011-CA-000033-O

2.    Obligors and BBT agree to forbear from further legal proceedings against each other in this case, subject to the terms and conditions of this stipulation.

3.    Obligors acknowledge that they have no valid or lawful defense or right of setoff to the amended complaint that BBT filed against Obligors in this action or to BBT's underlying claims against Obligors under the loan documents between them more specifically described in the pleadings, as modified, and all other and further loan documents between BBT and Obligors that are related to the loan upon which the complaint, as amended, is based, and that Obligors have no claims, counterclaims, objections, rescission rights or claims of offset against BBT or the obligations of Obligors to pay the indebtedness described in this stipulation to BBT.

4.    As of September 6, 2011, excluding all payments contemplated by this stipulation, Obligors are jointly and severally indebted to BBT, by virtue of the promissory note and personal guaranty, in the following amounts:

| | | | |
|---|---|---|---|
| a. | Principal. | $ | 11,533,832.91 |
| b. | Interest from June 27, 2009 through September 6, 2011. [1] | $ 1,265,555.97 | |
| | Less Obligor Payment (rec'd July 18, 2011) | $ (100,000.00) | |
| | Net Interest through September 6, 2011 | $ | 1,165,555.97 |
| e. | Late fees. [1] | $ | 56,035.20 |
| f. | Inspection and Appraisal fees. | $ | 5,015.00 |
| g. | Costs. | $ | 10,000.00 |
| h. | Attorney's fees. | $ | 20,500.00 |
| | Total through September 6, 2011. | $ | 12,790,939.08 |

---

[1]    So long as Obligors perform as agreed under this stipulation, BBT is willing to refrain from collecting default interest and late fees owed on the obligations.  BBT, however, reserves its right to collect default interest (from and after the date when interest is last paid) and late fees, upon default under this stipulation.

The per diem is $1,579.97[2]. Upon default under this stipulation, however, interest shall accrue at the maximum rate permitted by law.

     5.     BBT shall refrain from obtaining a judgment for the indebtedness described in ¶ 4 above so long as:

         a.     On or before August 5, 2011, BBT's undersigned counsel receives from Obligors:

         (1)     This stipulation, fully executed by Obligors and notarized; and

         (2)     Copies of complete 2009 Tax Returns (including K-1s and all Schedules) for each of Coral, Wolman and Sheppard; and

         (3)     Complete, fully executed copies of all leases for space located on the real property owned by Coral (the "Coral Collateral"), together with all amendments and guaranties related thereto; and

         (4)     Evidence of payment to Orange County of all 2009 ad valorem taxes for the Coral Collateral; and

         (5)     A Mortgage Modification and Spreader Agreement executed by Coral in favor of BBT and a Limited Partnership Certificate of Approval and Authority (collectively, the "Mortgage Modification Documents"), each in the form attached to this stipulation, and in each case fully executed, witnessed and notarized, as applicable, to be held in escrow by BBT's counsel, subject to the terms of ¶¶ 5.c and 6, below.

     From and after August 5, 2011, and so long as no default by Obligors occurs under this stipulation and/or under the Development Stipulation, BBT shall cooperate with

---

[2]     In the event Obligors make a principal paydown as set forth herein at any time prior to May 31, 2012, and so long as no default has occurred or is continuing hereunder, interest shall be recalculated based on the outstanding principal amount, at a fixed rate of interest equal to five percent (5.00%) per annum.

Obligors, to the extent commercially reasonable and at Obligors' sole cost and expense, with Obligor's written requests for consent and/or other actions by BBT which may be necessary to establish easements over property of Obligors which remains subject to BBT's mortgage.

      b.      On or before August 15, 2011, Obligors pay, or cause to be paid, to BBT the amount of $168,000.00, in immediately available funds, to be applied by BBT to accrued but unpaid interest described in ¶ 4 above.

      c.      On or before September 6, 2011, Obligors deliver to BBT:

      (1)      Payment, in immediately available funds, of $6,000,000.00, to be applied by BBT to outstanding principal set forth in ¶ 4a; and

      (2)      Payment, in immediately available funds, of $997,555.97, to be applied by BBT to accrued but unpaid interest in full and complete satisfaction of the amount set forth in ¶ 4b.; and

      (3)      Payment, in immediately available funds, of $5,015.00, to be applied by BBT to BBT's inspection and appraisal fees in full and complete satisfaction of the amount set forth in ¶ 4d.; and

      (4)      Payment, in immediately available funds, of $14,417.29 for BBT's fee for this stipulation, to be applied by BBT in its discretion; and

      (5)      Payment, in immediately available funds, of $7,500.00 for BBT's legal fees and costs for preparation of this stipulation, and $23,000.00 for BBT's litigation legal fees and costs in full and complete satisfaction of the amounts set forth in ¶¶ 4e. and f.

      Simultaneously upon receipt of all payments due under this ¶ 5.c, and provided no other defaults have occurred under this stipulation or that certain Stipulation and Agreed Order dated on or about the date hereof between Guarantors, WSG Development Co., a Florida

CASE NO. 2011-CA-000033-O

corporation, and BBT entered into with respect to Miami-Dade County Circuit Court Case No. 09-82068 CA 11 (the "Development Stipulation"), BBT shall execute and deliver a partial release of mortgage and other loan documents in recordable form and acceptable to Obligors, with respect to the real property encumbered by BBT's mortgage and described on Exhibit A attached hereto and return the original Mortgage Modification Documents to Obligors.

> d.    On or before October 6, 2011, and on the same day of each calendar month thereafter, through and including April 6, 2012, Obligors pay to BBT a fixed monthly payment of principal and interest in the amount of $34,752.17, in immediately available funds, based on a fixed interest rate of five percent (5.00%) per annum and a twenty (20) year amortization period.

> e.    On or before April 30, 2012, Obligors deliver to BBT:

> > (1)    Payment, in immediately available funds, of the amount of $3,000,000.00, to be applied by BBT to principal; and

> > (2)    Payment, in immediately available funds, of the amount of $37,919.28, to be applied by BBT to accrued interest from April 6, 2012 through April 30, 2012.

> Simultaneously upon receipt of all payments due under this ¶ 5.d, and provided no other defaults have occurred under this stipulation or the Development Stipulation, BBT shall execute and deliver a partial release of mortgage and other loan documents in recordable form and acceptable to Obligors, with respect to the real property described on Exhibit B attached hereto.

> f.    Obligors shall deliver, or cause to be delivered, complete, fully executed copies of all 2010 and 2011 Tax Returns or Tax Return Extensions for each of Coral, Wolman

and Sheppard, and for all affiliate entities owned or controlled directly or indirectly by Wolman and Sheppard, within sixty (60) days of filing.

        g.      Obligors otherwise perform in strict accordance with the terms of the underlying loan documents and no default occurs under the Development Stipulation.

        h.      On or before May 31, 2012, Obligors pay to BBT all remaining outstanding indebtedness described in ¶ 4 above, including all accrued but unpaid interest. Simultaneously upon receipt of such payment, BBT shall (i) file (or cause to be filed) a joint dismissal with prejudice as to all claims and counterclaims in the action; (ii) record a satisfaction of mortgage and all other loan documents, if necessary; and (iii) deliver a release of Obligors' personal guaranties.

All payments and other performance shall be delivered to Mr. Orlando M. Gelpi, Senior Vice President, BB&T, 1200 Brickell Avenue, 10th Floor, Miami, Florida 33131.

        6.      If Obligors fail to perform any act or make payment in the full amount, at the time required and in the form specified by ¶ 5 above, BBT shall, in addition to submitting for recordation the Mortgage Modification Documents (at the option of BBT and if not previously returned to Obligors), have the immediate and unfettered right to proceed, ex parte and with ten (10) calendar days' prior written notice (and provided the nonpayment or default is not cured within this ten (10) day period), upon this stipulation and an affidavit by BBT or its counsel attesting to non-payment or failure to perform, and the court shall enter a final judgment of foreclosure against Obligors and final judgment against Wolman and Sheppard for monetary damages, for the full amount of the indebtedness reflected in ¶ 4 above, with default interest at the maximum rate allowed by law through the date of the judgment, less a dollar-for-dollar credit for payments made by Obligors to BBT pursuant to ¶ 5. Postjudgment interest shall accrue at the

maximum rate allowed by law. Notice to Obligors hereunder shall be sent via certified U.S. Mail or overnight mail service to Obligor's counsel at Berman Rennert Vogel & Mandler, P.A., c/o Wendy Beck, Esq., 100 S.E. 2nd Street, Suite 2900, Miami, Florida 33131.

7.     To induce BBT to enter into this stipulation, Obligors, for themselves and for each of their agents, attorneys, successors, predecessors, affiliates, members, managers, shareholders, officers, directors, heirs, personal representatives and assigns, release BBT, Colonial, and their respective predecessors, successors, assigns, officers, directors, shareholders, partners, employees, agents, affiliates, and attorneys (collectively, "Affiliates"), jointly and severally, from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, offsets, rights, actions and causes of action for contribution and indemnity, whether arising at law or in equity (including without limitation, claims of fraud, duress, mistake, tortious interference, usury, or control), whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, and whether or not asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done by BBT or its Affiliates, which has occurred in whole or in part, or was initiated at any time from the beginning of time up to and immediately preceding the moment of the execution of this stipulation. Obligors agree that the foregoing release and waiver is intended to be as broad and inclusive as permitted by the laws of the State of Florida.

8.      BBT and Obligors each had the benefit of counsel in connection with executing this stipulation. BBT and Obligors execute this stipulation knowingly and voluntarily after undertaking a thorough investigation and consideration of all the relevant facts and circumstances surrounding this action.

9.      BBT and Obligors have entered into this stipulation without undue influence, fraud, coercion, duress, misrepresentation or restraint having been practiced upon them in connection with the stipulation.

10.     Obligors waive any and all rights to contest or challenge the allegations of the complaint, as amended, or to appeal any order or judgment entered in this action, and any right to appeal any such order or judgment.

11.     BBT and Obligors consent to entry of the agreed order that is attached to this stipulation.

12.     Should Obligors, or any of them, file for bankruptcy during the term of this stipulation, the stipulation shall be in default and BBT's obligations under the stipulation shall terminate. Obligors agree that, in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, including the forbearance of BBT from exercising the rights and remedies otherwise available, the receipt and sufficiency of which are acknowledged, in the event any Obligor (i) files with any bankruptcy court of competent jurisdiction or becomes the subject of any petition under Title 11 of the U.S. Code, as amended; (ii) becomes the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended (iii) files or becomes the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for

debtors; (iv) seeks or consents to or acquiesces in the appointment of any trustee, receiver, conservator, or liquidator; or (v) becomes the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, BBT shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or otherwise, on or against the exercise of the rights and remedies otherwise available to BBT as provided in underlying loan documents from Obligors, and as otherwise provided by law.

13.    This stipulation may be executed in several counterparts and all counterparts so executed shall constitute one agreement binding on all the parties hereto, notwithstanding that all the parties are not signatories to the original or the same counterpart.  If less than all parties sign this stipulation, or a counterpart, the stipulation shall be effective against the signing parties.

14.    The invalidity, illegality or unenforceability of any provision of this stipulation, pursuant to judicial decree or otherwise, shall not affect the validity or enforceability of any other provision of this stipulation, each of which shall remain in full force and effect.  Upon default by Obligors or any of them under this stipulation, all terms of this stipulation shall survive other than those terms obligating BBT to forbear.  The terms of this stipulation shall also survive satisfaction of all of the indebtedness of Obligors to BBT.

15.    No failure of any party to exercise any power given under this stipulation or to insist upon strict compliance with any of the terms or conditions specified in this stipulation shall constitute a waiver of such party's right to demand strict compliance with the terms of this stipulation or the loan documents.

16.    Nothing contained in this stipulation shall be deemed or construed by the parties hereto or by any third party to create the relationship of principal and agent, partners, joint venturers, or of any association whatsoever between BBT and Obligors other than the arms-length relationship of creditor and debtors.

17.    This stipulation is intended by the parties as a final expression of their agreement with respect to the subject matter hereof and as a complete and exclusive statement of the terms and conditions thereof, superseding and replacing all prior negotiations between the parties hereto, or any of them, whether written or oral.  Any provision of this stipulation may be changed, waived or terminated only by written instrument signed by the party against whom the change, waiver, or termination is sought to be enforced.  Each of the parties to this stipulation acknowledges that no other party, or agent or attorney of any other party, has made any promise, representation, or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce the other party to execute this stipulation or any of the other documents referred to herein, and each party acknowledges that he or it has not executed this stipulation  or such other documents in reliance upon any such promise, representation or warranty not contained herein.  The parties to this stipulation acknowledge that all of the terms of this stipulation were negotiated at arm's length and that this stipulation and all documents executed in connection with it were prepared and executed without undue influence of any kind exerted by any party upon any other party.

18.    It is the intent of the parties to this stipulation that the stipulation shall not in any way adversely affect the lien of the mortgage, assignment of leases and other loan documents between BBT and Obligors.  To the extent this stipulation or any provision hereof shall be construed by a court of competent jurisdiction as subordinating the lien priority of the loan

documents to any claim which would otherwise be subordinate thereto (and provided that ruling is not appealed or appealable), such provision or provisions shall be void and of no force and effect; except that this stipulation shall constitute, as to any provision so construed, a lien upon the collateral subordinate to such third person's claims, incorporating by reference the terms of the loan. The loan documents shall then be enforced pursuant to the terms therein contained, independent of any such provisions; provided, however, that notwithstanding the foregoing, BBT and Obligors, as between themselves, shall be bound by all terms and conditions hereof until all indebtedness owing to BBT shall have been paid in full. This stipulation is not a novation of any of the existing loan documents. The parties agree that except as modified in this stipulation, all terms, conditions, rights and obligations under the loan documents shall otherwise remain in full force and effect as originally written and agreed. The loan documents and this stipulation shall be construed to give BBT the greatest possible cumulative rights and remedies. Therefore, should there be any apparent conflict between any loan document and this stipulation or under any other agreement, the documents shall be construed to give BBT the greatest possible cumulative rights and remedies.

19.     This stipulation shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida, excluding the principles thereof governing conflicts of law.

20.     This stipulation shall be binding upon, and shall inure to the benefit of, the respective successors and assigns of the parties.

21.     Notwithstanding anything to the contrary contained in this stipulation, BBT may continue to litigate with any defendants other than Obligors.

22.     Time is of the essence of each provision of this stipulation.

CASE NO. 2011-CA-000033-O

**WHEREFORE,** the parties respectfully request that the court enter the attached agreed order approving the stipulation.

Dated: _July 29th, 2011_____.

JONES, WALKER, WAECHTER, POITEVENT,
CARRERE & DENEGRE, L.L.P.
Counsel for Branch Banking and Trust Company
Suite 500
601 Brickell Key Drive
Miami, FL 33131
Tel. (305) 679-5700
Fax  (305) 679-5710

By: _____
Todd M. Feldman, Esq.
Fla. Bar No. 0647721

**BRANCH BANKING AND TRUST
COMPANY,** as successor in interest to
Colonial Bank by acquisition of assets from
the FDIC as Receiver for Colonial Bank

By: _____
Orlando M. Gelpi
Senior Vice President

{M0131376.15 }                    12

CASE NO.  2011-CA-000033-O

BERMAN, RENNERT VOGEL &
   MANDLER, P.A.
Counsel for Obligors
29th Floor, International Place
100 S.E. 2nd Street
Miami, Florida 33131
Tel.  (305) 577-4177
Fax (305) 347-6475

By:_____
   Jason R. Block, Esq.
   Fla. Bar No. 064 4271

_____
**PHILIP WOLMAN,** individually

_____
**ERIC D. SHEPPARD,** individually

**WSG CORAL SPRINGS, LP,** a
Delaware limited partnership

By:   WSG Coral Springs GP, LLC, a
      Delaware limited liability company,
      its General Partner

     By:_____
        Eric D. Sheppard, Managing Member

     By:_____
        Philip Wolman, Managing Member

CASE NO.  2011-CA-000033-O

BERMAN, RENNERT VOGEL &
   MANDLER, P.A.
Counsel for Obligors
29th Floor, International Place
100 S.E. 2nd Street.
Miami, Florida 33131
Tel.  (305) 577-4177
Fax  (305) 347-6476

By:_____
   Jason R. Block, Esq.
   Fla. Bar No. _____

**PHILIP WOLMAN**, individually            **ERIC D. SHEPPARD**, individually

**WSG CORAL SPRINGS, LP**, a
Delaware limited partnership

By:   WSG Coral Springs GP, LLC, a
      Delaware limited liability company,
      its General Partner

    By: _____
        Eric D. Sheppard, Managing Member

    By: _____
        Philip Wolman, Managing Member

CASE NO.  2011-CA-000033-O

STATE OF ~~FLORIDA~~ New York    )
                                 : ss.
COUNTY OF New York               )

    The foregoing instrument was acknowledged before me on July 28 _____, 2011, by Philip Wolman, individually, and as Managing Member of WSG Coral Springs GP, LLC, a Delaware limited liability company, General Partner of WSG Coral Springs, LP, a Delaware limited partnership, on behalf of the limited partnership.  He is personally known to me or has produced _____ (type of identification) as identification and did not take an oath.

_____
Signature of person taking acknowledgment

ELISSA FUDIM
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02FU6201536
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES 03/02/2013

_____
Name of acknowledger typed, printed or stamped

Notary Public
_____
Title or rank


STATE OF FLORIDA              )
                              : ss.
COUNTY OF Miami Dade          )

    The foregoing instrument was acknowledged before me on July 29 _____, 2011, by Eric D. Sheppard, individually, and as Managing Member of WSG Coral Springs GP, LLC, a Delaware limited liability company, General Partner of WSG Coral Springs, LP, a Delaware limited partnership, on behalf of the limited partnership.  He is personally known to me or has produced _____ (type of identification) as identification and did not take an oath.

_____
Signature of person taking acknowledgment

NOTARY PUBLIC
STATE OF FLORIDA

PAMELA KONG
MY COMMISSION # DD 944352
EXPIRES: January 8, 2014
Bonded Thru Budget Notary Services

_____
Name of acknowledger typed, printed or stamped

Notary Public
_____
Title or rank

EXHIBIT A

LEGAL DESCRIPTION

SHOPPES AT ALAFAYA TRAIL
PHASE 2

A PORTION OF LOTS 7 AND 9, ALL OF LOT 8 AND LOTS 10 THROUGH 13, AND A PORTION OF INDIANHEAD TRAIL, SUNSET TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK "X", PAGE 11 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA AND A PORTION OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4, ALL LYING IN SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4, OF THE SOUTHWEST 1/4, OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4, OF THE SOUTHWEST 1/4, A DISTANCE OF 30.00 FEET, TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF O'BERRY HOOVER ROAD AS RECORDED IN OFFICIAL RECORDS BOOK 1913, PAGE 245 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE CONTINUE N87°58'30"E, ALONG SAID NORTH LINE, A DISTANCE OF 644.23 FEET TO THE SOUTHWEST CORNER OF SUNSET TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK "X", PAGE 11 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA AND THE POINT OF BEGINNING; THENCE RUN N01°17'41"W, ALONG THE WEST LINE OF SAID PLAT, A DISTANCE OF 557.58 FEET TO THE NORTHWEST CORNER OF LOT 13 OF SAID PLAT; THENCE DEPARTING SAID WEST LINE RUN N89°40'46"E ALONG THE NORTH LINE OF SAID LOT 13, A DISTANCE OF 30.06 FEET; THENCE DEPARTING SAID NORTH LINE RUN S00°50'54"E, A DISTANCE OF 55.85 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 30.00 FEET; THENCE RUN N00°50'54"W, A DISTANCE OF 55.58 FEET TO THE NORTH LINE OF SAID LOT 13; THENCE RUN N89°40'46"E ALONG SAID NORTH LINE, A DISTANCE OF 258.71 FEET TO A POINT ON THE WESTERLY RIGHT OF WAY OF INDIANHEAD TRAIL; THENCE RUN S01°21'13"E ALONG SAID WESTERLY RIGHT OF WAY, A DISTANCE OF 90.04 FEET TO A POINT ON THE WESTERLY EXTENSION OF THE AFOREMENTIONED LOT 7; THENCE RUN N89°41'52"E ALONG SAID WESTERLY EXTENSION THEREOF AND THE NORTH LINE OF SAID LOT 7, A DISTANCE OF 198.40 FEET; THENCE DEPARTING SAID NORTH LINE RUN S00°50'54"E, A DISTANCE OF 104.28 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 156.13 FEET TO THE WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL AS RECORDED IN OFFICIAL RECORDS BOOK 2612, PAGE 1894 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE RUN S01°25'12"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 224.01 FEET; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE RUN S89°09'06"W, A DISTANCE OF 176.42 FEET; THENCE RUN S00°50'54"E, A DISTANCE OF 138.81 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 137.62 FEET; THENCE RUN N00°50'54"W,

CASE NO. 2011-CA-000033-O

A DISTANCE OF 12.00 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 40.00 FEET TO SAID WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL; THENCE RUN S00°50'54"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 85.00 FEET; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE RUN S89°09'06"W, A DISTANCE OF 177.63 FEET; THENCE RUN S00°50'54"E, A DISTANCE OF 143.00 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 177.63 TO SAID WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL; THENCE RUN S00°50'54"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 160.00 FEET; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE RUN S89°09'06"W, A DISTANCE OF 424.34 FEET; THENCE RUN N01°02'00"W, A DISTANCE OF 385.47 FEET; THENCE RUN S87°58'30"W, A DISTANCE OF 247.63 FEET TO THE POINT OF BEGINNING.

CONTAINS 434,877 SQUARE FEET OR 9.98 ACRES MORE OR LESS.

SHOPPES AT ALAFAYA TRAIL LOT 2

A PORTION OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4, OF THE SOUTHWEST 1/4, OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4, OF THE SOUTHWEST 1/4, A DISTANCE OF 1347.54 FEET TO A POINT ON THE WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL AS RECORDED IN OFFICIAL RECORDS BOOK 2612, PAGE 1894 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE RUN S00°50'54"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 91.21 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE ALONG SAID WESTERLY RIGHT OF WAY LINE S00°50'54"E, A DISTANCE OF 143.00 FEET; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE, RUN S89°09'06"W, A DISTANCE OF 177.63 FEET; THENCE RUN N00°50'54"W, A DISTANCE OF 143.00 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 177.63 FEET TO A POINT ON THE AFOREMENTIONED WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL AND THE POINT OF BEGINNING.

CONTAINS 25,400 SQUARE FEET OR 0.58 ACRES MORE OR LESS

SHOPPES AT ALAFAYA TRAIL
LOT 3

A PORTION OF LOT 9, SUNSET TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK "X", PAGE 11 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA AND A PORTION OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4, OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

CASE NO. 2011-CA-000033-O

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4 OF THE SOUTHWEST 1/4, A DISTANCE OF 30.00 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF O'BERRY HOOVER ROAD AS RECORDED IN OFFICIAL RECORDS BOOK 1913, PAGE 245 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE CONTINUE N87°58'30"E, ALONG SAID NORTH LINE, A DISTANCE OF 1317.54 FEET TO THE WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL AS RECORDED IN OFFICIAL RECORDS BOOK 2612, PAGE 1894 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA AND THE POINT OF BEGINNING; THENCE RUN S00°50'54"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 6.21 FEET; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE RUN S89°09'06"W, A DISTANCE OF 40.00 FEET; THENCE RUN S00°50'54"E, A DISTANCE OF 12.00 FEET; THENCE RUN S89°09'06"W, A DISTANCE OF 137.62 FEET; THENCE RUN N00°50'54"W, A DISTANCE OF 138.81 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 176.42 TO THE AFOREMENTIONED WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL; THENCE RUN S01°25'12"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 120.61 FEET TO THE POINT OF BEGINNING.

CONTAINS 24,103 SQUARE FEET OR 0.55 ACRES MORE OR LESS.

SHOPPES AT ALAFAYA TRAIL
LOT 4

A PORTION OF LOT 7, SUNSET TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK "X", PAGE 11 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; SAID LANDS LYING IN SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4 OF THE SOUTHWEST 1/4, A DISTANCE OF 30.00 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF O'BERRY HOOVER ROAD AS RECORDED IN OFFICIAL RECORDS BOOK 1913, PAGE 245 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE CONTINUE N87°58'30"E, ALONG SAID NORTH LINE, A DISTANCE OF 1317.54 FEET TO THE WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL AS RECORDED IN OFFICIAL RECORDS BOOK 2612, PAGE 1894 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE RUN N01°25'12"W ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 344.62 FEET TO THE POINT OF BEGINNING; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE RUN S89°09'06"W, A DISTANCE OF 156.13 FEET;  THENCE RUN N00°50'54"W, A DISTANCE OF 104.28 FEET TO THE NORTH LINE OF SAID LOT 7, SUNSET TERRACE; THENCE RUN N89°41'52"E ALONG SAID NORTH LINE, A

CASE NO. 2011-CA-000033-O

DISTANCE OF 155.11 FEET TO THE AFOREMENTIONED WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL; THENCE RUN S01°25'12"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 102.80 FEET TO THE POINT OF BEGINNING.

CONTAINS 16,111 SQUARE FEET OR 0.36 ACRES MORE OR LESS.

SHOPPES AT ALAFAYA TRAIL
TRACT C

A PORTION OF LOT 13, SUNSET TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK "X", PAGE 11 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA AND A PORTION OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4, ALL LYING IN SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4, OF THE SOUTHWEST 1/4, OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4, OF THE SOUTHWEST 1/4, A DISTANCE OF 30.00 FEET, TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF O'BERRY HOOVER ROAD AS RECORDED IN OFFICIAL RECORDS BOOK 1913, PAGE 245 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE CONTINUE N87°58'30"E, ALONG SAID NORTH LINE, A DISTANCE OF 644.23 FEET TO THE SOUTHWEST CORNER OF SUNSET TERRACE, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK "X", PAGE 11 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE RUN N01°17'41"W, ALONG THE WEST LINE OF SAID PLAT, A DISTANCE OF 557.58 FEET TO THE NORTHWEST CORNER OF LOT 13 OF SAID PLAT; THENCE DEPARTING SAID WEST LINE RUN N89°40'46"E ALONG THE NORTH LINE OF SAID LOT 13, A DISTANCE OF 30.06 FEET TO THE POINT OF BEGINNING; THENCE DEPARTING SAID NORTH LINE RUN S00°50'54"E, A DISTANCE OF 55.85 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 30.00 FEET; THENCE RUN N00°50'54"W, A DISTANCE OF 55.58 FEET TO THE NORTH LINE OF SAID LOT 13; THENCE RUN S89°40'46"W, A DISTANCE OF 30.00 FEET TO THE POINT OF BEGINNING.

CONTAINS APPROXIMATELY 1,670 SQUARE FEET OR 0.038 ACRES MORE OR LESS.

CASE NO. 2011-CA-000033-O

EXHIBIT B

LEGAL DESCRIPTION

SHOPPES AT ALAFAYA TRAIL
LOT 5

A PORTION OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4, OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4 OF THE SOUTHWEST 1/4, A DISTANCE OF 30.00 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF O'BERRY HOOVER ROAD AS RECORDED IN OFFICIAL RECORDS BOOK 1913, PAGE 245 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE CONTINUE N87°58'30"E, ALONG SAID NORTH LINE, A DISTANCE OF 1317.54 FEET TO THE WESTERLY RIGHT OF WAY LINE OF ALAFAYA TRAIL AS RECORDED IN OFFICIAL RECORDS BOOK 2612, PAGE 1894 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE RUN S00°50'54"E ALONG SAID WESTERLY RIGHT OF WAY LINE, A DISTANCE OF 394.21 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE ALONG SAID WESTERLY RIGHT OF WAY LINE RUN S00°50'54"E, A DISTANCE OF 501.84 FEET; THENCE DEPARTING SAID WESTERLY RIGHT OF WAY LINE, RUN S88°40'33"W, A DISTANCE OF 585.00 FEET; THENCE RUN N00°50'54"W , A DISTANCE OF 176.80 FEET; THENCE RUN N88°58'00"E, A DISTANCE OF 161.70 FEET; THENCE RUN N01°02'00"W, A DISTANCE OF 329.38 FEET; THENCE RUN N89°09'06"E, A DISTANCE OF 424.34 FEET TO THE POINT OF BEGINNING.

CONTAINS 241,860 SQUARE FEET OR 5.55 ACRES MORE OR LESS.

CASE NO.  2011-CA-000033-O

SHOPPES AT ALAFAYA TRAIL
TRACT D – STORMWATER RETENTION

A PORTION OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4, OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCE AT THE NORTHWEST CORNER OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 22, TOWNSHIP 22 SOUTH, RANGE 31 EAST, ORANGE COUNTY, FLORIDA; THENCE RUN N87°58'30"E ALONG THE NORTH LINE OF SAID NORTHWEST 1/4 OF THE SOUTHWEST 1/4, A DISTANCE OF 30.00 FEET TO A POINT ON THE EASTERLY RIGHT-OF-WAY LINE OF O'BERRY HOOVER ROAD AS RECORDED IN OFFICIAL RECORDS BOOK 1913, PAGE 245 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE CONTINUE N87°58'30"E, ALONG SAID NORTH LINE, A DISTANCE OF 426.12 FEET; THENCE DEPARTING SAID NORTH LINE RUN S01°02'00"E, A DISTANCE OF 706.78 FEET TO THE POINT OF BEGINNING; THENCE RUN N88°58'00"E, A DISTANCE OF 303.98 FEET; THENCE RUN S00°50'54"E, A DISTANCE OF 176.80 FEET; THENCE RUN S88°40'33"W, A DISTANCE OF 75.00 FEET; THENCE RUN S00°50'54"E, A DISTANCE OF 364.98 FEET TO THE SOUTH LINE OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SAID SECTION 22; THENCE RUN S88°40'33"W ALONG SAID SOUTH LINE, A DISTANCE OF 417.99 FEET TO THE EAST LINE OF THAT CERTAIN CONSERVATION EASEMENT RECORDED IN OFFICIAL RECORDS BOOK 8998, PAGE 1636 OF THE PUBLIC RECORDS OF ORANGE COUNTY, FLORIDA; THENCE RUN ALONG SAID EAST LINE THE FOLLOWING COURSES; N55°17'45"W, A DISTANCE OF 32.31 FEET; THENCE RUN N14°57'17"W, A DISTANCE OF 78.48 FEET; THENCE RUN N34°11'37"E, A DISTANCE OF 68.91 FEET; THENCE RUN N12°49'54"W, A DISTANCE OF 47.91 FEET; THENCE RUN N33°52'31"E, A DISTANCE OF 63.23 FEET; THENCE RUN N88°38'35"E, A DISTANCE OF 169.72 FEET; THENCE RUN N01°02'00"W, A DISTANCE OF 293.23 FEET TO THE POINT OF BEGINNING.

CONTAINS 189,482 SQUARE FEET OR 4.34 ACRES MORE OR LESS.

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT, IN AND FOR ORANGE
COUNTY, FLORIDA.

CASE NO. 2011-CA-000033-O

BRANCH BANKING AND TRUST
COMPANY,

      Plaintiff,

vs.

WSG CORAL SPRINGS, LP, ET AL.,

      Defendants.

_____/

## AGREED ORDER APPROVING STIPULATION

This cause came before the court upon the stipulation between plaintiff, Branch Banking

and Trust Company, as successor in interest to Colonial Bank by acquisition of assets from the

FDIC as Receiver for Colonial Bank, and defendants WSG Coral Springs, LP, Philip Wolman

and Eric D. Sheppard, the court approves and adopts the stipulation as an order of the court and

retains jurisdiction to enforce the stipulation's terms.

Ordered in chambers at Orange County, Florida, on _____

_____, _____.

_____
Circuit Court Judge

Copies furnished to:
 Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, L.L.P.
 Berman, Rennert, Vogel &
  Mandler, P.A.

This Instrument Prepared By,
And Upon Recordation Return To:
Jones, Walker, Waechter, Poitevent,
    Carrere & Denegre, L.L.P.
601 Brickell Key Drive, Suite 500
Miami, Florida 33131
Attn: Christopher M. Hinsley, Esq.
Telephone: (305) 679-5700                    (Reserved for Clerk of Court)

## MORTGAGE MODIFICATION AND SPREADER AGREEMENT

THIS **MORTGAGE MODIFICATION AND SPREADER AGREEMENT** (this "Modification") is made this __ day of _____, 2011, by and among **WSG CORAL SPRINGS, LP**, a Delaware limited partnership (the "Borrower") and **BRANCH BANKING AND TRUST COMPANY**, successor in interest to Colonial Bank by acquisition of assets from the FDIC as Receiver for Colonial Bank (the "Lender").

### WITNESSETH:

**WHEREAS**, Borrower executed and delivered to Lender a certain Promissory Note in favor of Lender dated April 25, 2006, in the original principal amount of $6,760,000.00, a certain Promissory Note dated March 23, 2007, in the principal sum of $240,500.00 and a future advance in the amount of $4,739,500.00, as collectively consolidated by that certain Consolidated and Restated Renewal and Future Advance Promissory Note dated August 27, 2007, in the original principal amount of $11,740,000.00 (as extended, collectively, the "Note"), which Note evidences a mortgage loan (the "Loan") made by Lender to Borrower.

**WHEREAS**, Borrower executed and delivered to Lender a certain Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement recorded May 9, 2006 in Official Records Book 8630, Page 2565, of the Public Records of Orange County, Florida, as subsequently amended, increased and spread to additional parcels by a Mortgage Modification, Notice of Future Advance And Spreader Agreement dated March 21, 2007 and recorded April 2, 2007 in Official Records Book 9192, Page 560, of the Public Records of Orange County, Florida, as further modified by a Second Mortgage Modification, Notice And Receipt For Future Advance dated August 27, 2007 and recorded September 19, 2007 in Official Records Book 9440, Page 1268, of the Public Records of Orange County, Florida (collectively, the "Mortgage"), which Mortgage encumbers real property located in Miami-Dade County, Florida, as described on Exhibit A attached hereto ("Parcel I") and which secures payment of the Original Loan;

Recorder's Note:   Florida Documentary Stamps and Intangible Taxes have been paid on the underlying indebtedness, and evidence thereof appears on the Mortgage. No additional funds are being loaned; therefore, no Florida Documentary Stamps and Intangible Taxes are due and payable hereon and the Renewal Note is exempt from additional taxation.

M0216883.DOC

**WHEREAS,** Philip Wolman and Eric D. Sheppard (collectively, "Guarantors") executed and delivered to Lender a certain Continuing and Unconditional Guaranty dated August 27, 2007, in favor of Lender (the "Guaranty", together with the Note and Mortgage, and all other documents and instruments executed or provided in connection with the Guaranty, Note, Mortgage and Loan, the "Loan Documents");

**WHEREAS,** as a part of the consideration of the Lender's promises more specifically set forth in a Stipulation and Agreed Order ("Stipulation") dated _____, 2011, by and among Lender, Guarantors and Borrower in Orange County Circuit Court Case No. 2011-CA-000033-O, Borrower has agreed to execute this Modification (i) to further secure the indebtedness evidenced by the Note, together with interest from time to time accrued, and (ii) to spread the lien, charge and encumbrance of the Mortgage and all other Loan Documents over additional property ("Parcel II"), which, with Parcel I, is described on <u>Exhibit B</u> attached hereto.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the Recitals and the Stipulation, Borrower agrees with and represents and warrants to Lender, and Lender agrees with Borrower, as follows:

1.    Borrower affirms that the Mortgage and this Modification secure the Note and all of the obligations under the Loan Documents. Any reference to the term "Mortgage" or "Security Instrument" in the Loan Documents shall mean and refer to, without limitation, the Mortgage as amended by this Modification.

2.    The lien of the Mortgage is hereby spread over both Parcel I and Parcel II, and the same shall and now constitutes a valid first mortgage lien thereon securing repayment of all indebtedness of Borrower to Lender and performance of all obligations of Borrower to Lender, and all references in the Mortgage, the Note and the other Loan Documents to the "Property" or "Premises" shall mean Parcel I, together with Parcel II.

3.    In consideration of the agreements of Lender herein, Borrower agrees that, at Borrower's sole expense, Borrower will cause this Modification and any other agreements constituting or modifying one or more of the Loan Documents to be properly recorded and will pay promptly all documentary stamps and intangible taxes as well as any interest or penalties for failure to timely pay such taxes, along with all costs associated with continuing Lender's security interest in Borrower's personal property, and will cause an endorsement to be issued to Lender's policy of title insurance extending the effective date through the date of such recording without the addition of any title exceptions except those that Lender finds to be satisfactory. Upon Borrower's failure to do so, Lender may take any of such actions, and Borrower will promptly reimburse Lender for the cost of such recording and financing statement continuation, including documentary stamps and intangible taxes (and any such interest or penalties), and of such title insurance endorsement. If the Lender's title insurer fails or refuses to issue such an endorsement or if this Modification could adversely affect the priority or enforceability of any of the Loan Documents, Lender may declare this Modification null and void. The agreements in this Paragraph 3 shall survive payment in full of the Note.

4.    Except as herein amended, the Mortgage will remain in full force and effect, and the Mortgage, as so amended, is hereby ratified and affirmed in all respects.    Borrower acknowledges that this Modification does not constitute a novation and that all terms and conditions not expressly modified herein shall remain in full force and effect.    Borrower confirms that it has no offsets or defenses with respect to the Mortgage as so amended.

5.    This Modification shall be binding upon the parties hereto and their respective successors and assigns.

*{Signatures on following pages}*

*{Signature pages to Mortgage Modification and Spreader Agreement}*

IN WITNESS WHEREOF, the parties have caused this Modification to be executed and delivered this __ day of _____, 2011.

WITNESSES:

LENDER:

**BRANCH BANKING AND TRUST COMPANY**, successor to Colonial Bank by acquisition of assets from the FDIC as Receiver for Colonial Bank

_____

Print Name:

_____

Print Name:

By: _____

    Name:

    Title:

STATE OF FLORIDA    )

                   : ss.

COUNTY OF_____)

    The foregoing instrument was acknowledged before me on _____ __, 2011, by _____ as _____ of Branch Banking and Trust Company, successor in interest to Colonial Bank by acquisition of assets from the FDIC as Receiver for Colonial Bank, on behalf of the bank. He/She is personally known to me or has produced _____ (type of identification) as identification and did not take an oath.

_____

Signature of person taking acknowledgment

_____

Name of acknowledger typed, printed or stamped

 Notary Public_____

Title or Rank

*{Signature pages to Mortgage Modification and Spreader Agreement}*

**WITNESSES:**

**BORROWER**:

**WSG CORAL SPRINGS, LP**, a
Delaware limited partnership

By: WSG Coral Springs GP, LLC, a
      Delaware limited liability company,
      its General Partner

_____
Print Name:

By:_____
    Eric D. Sheppard, Managing Member


_____
Print Name:

By:_____
    Philip Wolman, Managing Member


STATE OF FLORIDA      )
                   : ss.
COUNTY OF _____  )

     The foregoing instrument was acknowledged before me on _____
_____, 2011, by Philip Wolman, individually, and as Managing Member of WSG Coral Springs GP, LLC, a Delaware limited liability company, General Partner of WSG Coral Springs, LP, a Delaware limited partnership, on behalf of the limited partnership. He is personally known to me or has produced _____ (type of identification) as identification and did not take an oath.


_____
Signature of person taking acknowledgment


_____
Name of acknowledger typed, printed or stamped

 Notary Public_____
Title or rank

*{Signature pages to Mortgage Modification and Spreader Agreement}*

STATE OF FLORIDA      )
                            : ss.

COUNTY OF _____  )

      The foregoing instrument was acknowledged before me on _____ _____, 2011, by Eric D. Sheppard, individually, and as Managing Member of WSG Coral Springs GP, LLC, a Delaware limited liability company, General Partner of WSG Coral Springs, LP, a Delaware limited partnership, on behalf of the limited partnership. He is personally known to me or has produced _____ (type  of  identification)  as identification and did not take an oath.

_____

Signature of person taking acknowledgment

_____

Name of acknowledger typed, printed or stamped

Notary Public_____

Title or rank

## EXHIBIT A

### LEGAL DESCRIPTION OF PARCEL I

PARCEL A:

Lots 7, 8, 9, 10 and 11, of SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

PARCEL B:

The East 1/2 of the West 1/2 of the Southwest 1/4 of the Southwest 1/4 and the Northwest 1/4 of the Southwest 1/4 in Section 22, Township 22 South, Range 31 East, Orange County, Florida.

LESS AND EXCEPT:

The following described parcel sold and conveyed to the United States Postal Service by Deed dated March 29, 1988 and recorded April 5, 1988 in Official Records Book 3970, Page 2428:

Starting at the Northeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 22, Township 22 South, Range 31 East, Orange County, Florida, run South 00 degrees 50 minutes 54 seconds East, along the East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22 and the Westerly right-of-way line of Alafaya Trail, 896.05 feet to the Point of Beginning; thence South 88 degrees 40 minutes 21 seconds West, parallel with the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 660 feet; thence South 00 degrees 50 minutes and 54 seconds East, parallel with East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 365.00 feet to a point on the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22; thence North 88 degrees 40 minutes 21 seconds East along said Southerly line 660.00 feet to a point on the Westerly right-of-way line of Alafaya Trail; thence North 00 degrees 50 minutes 54 seconds West, along said Westerly right-of-way line 365.00 feet to the Point of Beginning; and

LESS AND EXCEPT:

Right of Way for O'Berry Hoover Road on the West.

PARCEL C:

Lot 13, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book "X" at Page 11, of the Public Records of Orange County, Florida.

## EXHIBIT B

LEGAL DESCRIPTION OF PARCEL I AND PARCEL II

PARCEL I

PARCEL A:

Lots 7, 8, 9, 10 and 11, of SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

PARCEL B:

The East 1/2 of the West 1/2 of the Southwest 1/4 of the Southwest 1/4 and the Northwest 1/4 of the Southwest 1/4 in Section 22, Township 22 South, Range 31 East, Orange County, Florida.

LESS AND EXCEPT:

The following described parcel sold and conveyed to the United States Postal Service by Deed dated March 29, 1988 and recorded April 5, 1988 in Official Records Book 3970, Page 2428:

Starting at the Northeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 22, Township 22 South, Range 31 East, Orange County, Florida, run South 00 degrees 50 minutes 54 seconds East, along the East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22 and the Westerly right-of-way line of Alafaya Trail, 896.05 feet to the Point of Beginning; thence South 88 degrees 40 minutes 21 seconds West, parallel with the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 660 feet; thence South 00 degrees 50 minutes and 54 seconds East, parallel with East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 365.00 feet to a point on the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22; thence North 88 degrees 40 minutes 21 seconds East along said Southerly line 660.00 feet to a point on the Westerly right-of-way line of Alafaya Trail; thence North 00 degrees 50 minutes 54 seconds West, along said Westerly right-of-way line 365.00 feet to the Point of Beginning; and

LESS AND EXCEPT:

Right of Way for O'Berry Hoover Road on the West.

PARCEL C:

Lot 13, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book "X" at Page 11, of the Public Records of Orange County, Florida.

M0216883.DOC

PARCEL II

Lot 12, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

This Instrument Prepared By,
And Upon Recordation Return To:
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, L.L.P.
601 Brickell Key Drive, Suite 500
Miami, Florida 33131
Attn: Christopher M. Hinsley, Esq.
Telephone: (305) 679-5700

(Reserved for Clerk of Court)

## LIMITED PARTNERSHIP
## CERTIFICATE OF APPROVAL AND AUTHORITY

The undersigned, being all of the Managing Members of WSG CORAL SPRINGS, GP, LLC, a Delaware limited liability company (the "**General Partner**"), sole general partner of WSG CORAL SPRINGS, LP, a Delaware limited partnership (the "**Partnership**"), hereby certify the following:

1.    The Partnership is the owner of certain property located in Orange County, Florida, and described on **Exhibit A** attached hereto (the "**Original Property**") and certain additional property located in Orange County, Florida, and described on **Exhibit B** attached hereto (the "**Additional Property**", collectively with the Original Property, the "**Property**"). The Partnership previously obtained a loan in the amount of $11,740,000.00 (as amended, renewed and modified from time to time, the "**Loan**") from Branch Banking and Trust Company, successor in interest to Colonial Bank by acquisition of assets from the FDIC as Receiver for Colonial Bank (the "**Bank**"). As security for the Loan, the Partnership granted to the Bank a mortgage lien on the Original Property (the "**Mortgage**").

2.    The Partnership has requested and the Bank has agreed to enter into that certain stipulation between Bank, Philip Wolman and Eric D. Sheppard ("**Guarantors**") and the Partnership in Orange County Circuit Court Case No. 2011-CA-000033-O not to obtain against Guarantors and Borrower a foreclosure and/or monetary judgment under the Mortgage and the Loan (the "**Stipulation**").

3.    As part of the consideration for Bank entering into the Stipulation, the Partnership has agreed to spread the lien of the Mortgage over the entirety of the Property upon default under the Stipulation (the "**Spreader**", collectively with the Stipulation, the "**Settlement**").

4.    This Certificate is executed to evidence the approval and consent of the General Partner of the Partnership to the spreading of the lien of the Mortgage and the Settlement, and to set forth the authority of the authorized signatory (designated below) of the Partnership who will

{M0217304.2}

execute and deliver any and all other necessary and appropriate documents in the name and on behalf of the Partnership and/or General Partner in connection with the Settlement.

5.  All necessary consents of the Partnership and General Partner for the Settlement have been obtained. The Resolution of the sole General Partner of the Partnership is attached hereto as **Exhibit C.**

6.  Each of the Partnership and General Partner is currently in existence under valid Certificates of Limited Partnership or Articles of Organization, as applicable, has had continued existence since inception, and is presently in full force and effect and in good standing in both Delaware and Florida. Delaware and Florida Certificates of Good Standing for the Partnership and General Partner, dated _____, 2011 and July 27, 2011, respectively, are attached hereto as **Exhibits D-1 and D-2.**

7.  The following are all of the limited partners and general partners of the Partnership and their respective partnership interests:

| GENERAL PARTNER: | PARTNERSHIP INTERESTS: |
|---|---|
| WSG Coral Springs, GP, LLC | 1.00% |
| LIMITED PARTNERS: | PARTNERSHIP INTERESTS: |
| Eric D. Sheppard | 39.50% |
| Philip Wolman | 39.50% |
| Shaquille O'Neal Revocable Trust | 6.00% |
| RSFGA Waterford, LLC | 4.00% |
| RSS Waterford, LLC | 10.00% |
| Total: | 100.00% |

8.  Each of Eric D. Sheppard and Philip Wolman, as Managing Members of the General Partner, is authorized, on behalf of the Partnership, and each acting alone, has the power, to execute and deliver all documents necessary or appropriate in connection with the Settlement, and is authorized both under the Certificate of Limited Partnership and any limited partnership agreement of the Partnership, and by specific authorization of the General Partner of the Partnership, as evidenced hereby, (i) to execute and deliver a Mortgage Modification and Spreader Agreement confirming that the Mortgage will continue to secure the Loan and the Original Property and spreading the lien of the Mortgage over the Additional Property, (ii) to execute and deliver the Stipulation, and (iii) to execute and deliver all other instruments relating to the Settlement as deemed by the General Partner to be necessary, appropriate and desirable in connection therewith. All such documents executed by Eric D. Sheppard and/or Philip Wolman as part of the closing of the Settlement shall be deemed to be valid and

binding obligations of the Partnership.

9.      The limited partnership agreement and operating agreement of the Partnership and General Partner, respectively, are attached hereto as **Exhibits E-1 and E-2**, and are true and correct and have not been amended or modified except as set forth therein.

10.     The Certificate of Limited Partnership and Articles of Organization for the Partnership and General Partner, as applicable, are attached hereto as **Exhibits F-1 and F-2**, and are true and correct and have not been modified or rescinded.

11.     Neither the Partnership nor the General Partner is or has been a debtor in a bankruptcy or insolvency proceeding since its inception.

12.     There has never been any dissolution of Partnership or the General Partner, each of which have each been in existence since their inception.

13.     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all such counterparts together shall constitute one and the same instrument.

14.     This Certificate may be relied upon by Fidelity National Title Insurance Company and its agents in connection with its provision of title insurance, and by Bank for all purposes.

*{Signatures on following pages}*

**IN WITNESS WHEREOF,** the undersigned has hereunto set its hand this ___ day of _____, 2011.

**WITNESSES:**                           **MANAGING MEMBERS:**

_____

Print Name:

_____         _____

Print Name:                              **ERIC D. SHEPPARD,** individually and as
                                         Managing Member of WSG Coral Springs GP,
                                         LLC, a Delaware limited liability company, General
                                         Partner of WSG Coral Springs, LP, a Delaware
                                         limited partnership

_____

Print Name:

_____         _____

Print Name:                              **PHILIP WOLMAN,** individually and as Managing
                                         Member of WSG Coral Springs GP, LLC, a
                                         Delaware limited liability company, General Partner
                                         of WSG Coral Springs, LP, a Delaware limited
                                         partnership

STATE OF FLORIDA              )
                              : ss.
COUNTY OF _____       )

The foregoing instrument was acknowledged before me on _____
_____, 2011, by Philip Wolman, individually, and as Managing Member of WSG Coral Springs
GP, LLC, a Delaware limited liability company, General Partner of WSG Coral Springs, LP, a
Delaware limited partnership, on behalf of the limited partnership. He is personally known to me or
has produced _____ (type of identification) as identification and did not
take an oath.

_____

Signature of person taking acknowledgment

_____

Name of acknowledger typed, printed or stamped

Notary Public_____

Title or rank

STATE OF FLORIDA   )
            : ss.
COUNTY OF _____ )

   The foregoing instrument was acknowledged before me on _____,
2011, by Eric D. Sheppard, individually, and as Managing Member of WSG Coral Springs GP, LLC,
a Delaware limited liability company, General Partner of WSG Coral Springs, LP, a Delaware
limited partnership, on behalf of the limited partnership. He is personally known to me or has
produced _____ (type of identification) as identification and did not
take an oath.

_____
Signature of person taking acknowledgment


_____
Name of acknowledger typed, printed or stamped

Notary Public _____
Title or rank

EXHIBIT A

LEGAL DESCRIPTION

ORIGINAL PROPERTY

PARCEL A:

Lots 7, 8, 9, 10 and 11, of SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

PARCEL B:

The East 1/2 of the West 1/2 of the Southwest 1/4 of the Southwest 1/4 and the Northwest 1/4 of the Southwest 1/4 in Section 22, Township 22 South, Range 31 East, Orange County, Florida.

LESS AND EXCEPT:

The following described parcel sold and conveyed to the United States Postal Service by Deed dated March 29, 1988 and recorded April 5, 1988 in Official Records Book 3970, Page 2428:

Starting at the Northeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 22, Township 22 South, Range 31 East, Orange County, Florida, run South 00 degrees 50 minutes 54 seconds East, along the East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22 and the Westerly right-of-way line of Alafaya Trail, 896.05 feet to the Point of Beginning; thence South 88 degrees 40 minutes 21 seconds West, parallel with the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 660 feet; thence South 00 degrees 50 minutes and 54 seconds East, parallel with East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 365.00 feet to a point on the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22; thence North 88 degrees 40 minutes 21 seconds East along said Southerly line 660.00 feet to a point on the Westerly right-of-way line of Alafaya Trail; thence North 00 degrees 50 minutes 54 seconds West, along said Westerly right-of-way line 365.00 feet to the Point of Beginning; and

LESS AND EXCEPT:

Right of Way for O'Berry Hoover Road on the West.

PARCEL C:

Lot 13, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book "X" at Page 11, of the Public Records of Orange County, Florida.

EXHIBIT B

LEGAL DESCRIPTION

ADDITIONAL PROPERTY

Lot 12, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

EXHIBIT C

GENERAL PARTNER RESOLUTION

**<u>WSG CORAL SPRINGS, LP</u>**

UNANIMOUS WRITTEN CONSENT TO ACTION
OF THE SOLE GENERAL PARTNER

The undersigned, being the sole General Partner of WSG Coral Springs, LP, a Delaware limited partnership (the "Partnership") by this written consent to action without a meeting pursuant to § 17-405 of the Delaware Code, hereby consent to the adoption of the resolutions attached hereto as <u>Schedule 1</u> with the same force and effect as if they had been adopted at a duly convened meeting of the sole General Partner of the Partnership. Facsimile and electronic signatures of this action by written consent shall have the same force and effect as original signatures.

IN WITNESS WHEREOF, the undersigned, being the sole General Partner of the Partnership, have executed this written consent to action as of this ___ day of _____, 2011.

**SOLE GENERAL PARTNER:**

WSG CORAL SPRINGS GP, LLC, a
Delaware limited liability company,

By: _____
    Eric D. Sheppard, Managing Member

By: _____
    Philip Wolman, Managing Member

## SCHEDULE 1

### RESOLUTIONS OF WSG CORAL SPRINGS, LP

WHEREAS, the sole General Partner of the Partnership has determined that it is in the best interests of the Partnership to enter into that certain stipulation between Branch Banking and Trust Company, successor in interest to Colonial Bank by acquisition of assets from the FDIC as Receiver for Colonial Bank (the "Bank"), Philip Wolman and Eric D. Sheppard and the Partnership with respect to Orange County Circuit Court Case No. 2011-CA-000033-O (the "Stipulation") and, as part of the consideration for Lender entering into the Stipulation, the Partnership has agreed to deliver a mortgage modification and spreader agreement to Bank to be held in escrow, and to break escrow and to spread the lien of the Mortgage in the event of default under the Stipulation (the "Spreader", collectively with the Stipulation, the "Settlement") over the entirety of that certain real property, legally described as follows (the "Property"):

SEE EXHIBIT ATTACHED HERETO.

NOW, THEREFORE, BE IT RESOLVED, that the Partnership is hereby directed to enter into the Settlement and, in connection therewith, to execute and deliver a stipulation, a mortgage modification and spreader agreement and any and all other documents necessary to consummate the Settlement, and to direct, authorize and empower each of Eric D. Sheppard and Philip Wolman, as Managing Members of WSG Coral Springs, GP, LLC, a Delaware limited liability company, the sole general partner of the Partnership ("General Partner"), as applicable (the "Authorized Party"), individually, to execute and deliver such modification instruments and resolutions and such other and further documents as may be reasonably necessary in connection therewith, and fulfill all such other obligations of the Partnership as are contemplated thereby, with such Settlement and additional provisions as each may deem advisable, necessary or appropriate.

BE IT FURTHER RESOLVED, the Authorized Party be, and hereby is, directed, authorized and empowered, on behalf of the Partnership and the General Partner, to take any and all other actions and execute any and all other instruments and documents, including, without limitation, any and all filings with any governmental agency, as he may deem advisable, necessary or appropriate in order to consummate the Settlement.

BE IT FURTHER RESOLVED, that all actions heretofore taken by the Authorized Party in connection with the Settlement are hereby adopted, approved, ratified and confirmed in all respects.

{M0217304.2}

12

EXHIBIT TO RESOLUTIONS

LEGAL DESCRIPTION

PARCEL A:

Lots 7, 8, 9, 10 and 11, of SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

PARCEL B:

The East 1/2 of the West 1/2 of the Southwest 1/4 of the Southwest 1/4 and the Northwest 1/4 of the Southwest 1/4 in Section 22, Township 22 South, Range 31 East, Orange County, Florida.

LESS AND EXCEPT:

The following described parcel sold and conveyed to the United States Postal Service by Deed dated March 29, 1988 and recorded April 5, 1988 in Official Records Book 3970, Page 2428:

Starting at the Northeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 22, Township 22 South, Range 31 East, Orange County, Florida, run South 00 degrees 50 minutes 54 seconds East, along the East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22 and the Westerly right-of-way line of Alafaya Trail, 896.05 feet to the Point of Beginning; thence South 88 degrees 40 minutes 21 seconds West, parallel with the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 660 feet; thence South 00 degrees 50 minutes and 54 seconds East, parallel with East line of the Northwest 1/4 of the Southwest 1/4 of said Section 22, 365.00 feet to a point on the South line of the Northwest 1/4 of the Southwest 1/4 of said Section 22; thence North 88 degrees 40 minutes 21 seconds East along said Southerly line 660.00 feet to a point on the Westerly right-of-way line of Alafaya Trail; thence North 00 degrees 50 minutes 54 seconds West, along said Westerly right-of-way line 365.00 feet to the Point of Beginning; and

LESS AND EXCEPT:

Right of Way for O'Berry Hoover Road on the West.

PARCEL C:

Lot 13, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book "X" at Page 11, of the Public Records of Orange County, Florida.

PARCEL D:

Lot 12, SUNSET TERRACE, according to the Plat thereof, as recorded in Plat Book X, Page 11, of the Public Records of Orange County, Florida.

EXHIBIT D-1

CERTIFICATES OF GOOD STANDING

WSG CORAL SPRINGS, LP

EXHIBIT D-2

CERTIFICATES OF GOOD STANDING

WSG CORAL SPRINGS, GP, LLC

{M0217304.2}

14

EXHIBIT E-1

LIMITED PARTNERSHIP AGREEMENT

WSG CORAL SPRINGS, LP

EXHIBIT E-2

OPERATING AGREEMENT

WSG CORAL SPRINGS, GP, LLC

EXHIBIT F-1

CERTIFICATE OF LIMITED PARTNERSHIP

WSG CORAL SPRINGS, LP

{M0217304.2}

EXHIBIT F-2

ARTICLES OF ORGANIZATION

WSG CORAL SPRINGS, GP, LLC